# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PATRICIA ALLEN,                           \*
3416 Curtis Drive Apt. #604               \*
Hillcrest Heights, MD 20746               \*
                                          \*
         Plaintiff,                       \*
                                          \*
V.                                        \*
                                          \*
**Honorable   Steven Terner Mnuchin**     \*
*Secretary of the Treasury*               \*        Civil Case
United States Bureau of                   \*
Engraving and Printing                    \*
1500 Pennsylvania Ave NW                  \*
Washington, DC 20220                      \*
Fax: (202) 622-6415                       \*
(202) 622 2000                            \*
Serve:                                    \*
                                          \*        <u>Jury Trial Demand</u>
                                          \*        On all claims
                                          \*
                                          \*
**Honorable <u>Jeff Sessions</u>**       \*
U.S ATTONEY GENERAL                       \*
Serve U.S. Attorney General               \*
1100 L St NW#11114                        \*
Washington, DC 20005                      \*
(202) 307-0341                            \*
**Jessie K. Liu,**                        **\***
 **District of Columbia**                 \*
U.S. ATTORNEY                             \*
Department of Justice                     \*
950 Pennsylvania Avenue, N.W.             \*
Washington, DC 20530                      \*
                                          \*
         Defendant(s)                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT OF DISCRIMINATION**
**UNDER TITLE VII OF 1964 CIVIL RIGHTS ACT**
**SUBSTANTIALLY BASED ON**
(i)      Race (ii) Retaliation for engaging in protected activities, (iii) harassment, (iv)
hostile work environment, (v) Disparate Treatment and (vi) denial of equal
employment opportunities

<u>**COUNT ONE ALLEGATIONS AGAINST THE**</u>
**Honorable   Steven Terner Mnuchin**
*Secretary of the Treasury*
**United States Bureau of**
**Engraving and Printing**

<u>**INTRODUCTION**</u>

I.     <u>***Timely filing***</u>**:** The complaint is timely filed with the Court. Right to sue by The United

States Equal Employment Opportunity Commission, (EEOC) was granted on March

05, 2018, giving Plaintiff 90-days to file a complaint with the U.S. District Court on or

before the expiration of the 90-days, which is June 04, 2018. This action is filed on

May 21, 2018.

**II.**    <u>**Title VII**</u>

The cause is brought under Title VII of the Civil Rights Act of 1964. Title VII of the

Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color,

religion, sex or national origin. Title VII also prohibits retaliation against employees who

exercise their rights under the law or participate in an investigation of a discrimination or

harassment claim.

**III.**   <u>**PLAINTIFF STATUS:**</u>

For all reasons stated herein and below:

1. The Plaintiff, *Patricia Allen*, an employee of Defendant, is in a protected class because she is a Black African American Female who engaged in Equal Employment Opportunity Activities, (EEO Activities), as explained in detail below.

## DENIAL OF EQUAL EMPLOYMENT OPPORTUNITY

2. Defendant advertised a position of employment in the Agency that was above Plaintiff pay grade and level. The advertised position was one in which Plaintiff had worked, without increased of pay, for several months, with good performance ratings and without incident. Plaintiff was qualified for the position. Plaintiff's qualifications for the position was demonstrated by her performance in the position for several months. Plaintiff had clearly demonstrated her qualification for the job for which she was not selected. An employee outside of the protected class was selected for the position. The employee who was selected for the position was less qualified than Plaintiff, with no on the job actual performance as Plaintiff. The Defendant's decision to not select Plaintiff for the position, and to select for the position the less qualified candidate, was motivated by Plaintiff's race, retaliation against Plaintiff for engaging in EEO Activities.

## CONTINUING COURSE OF EMPLOYMENT DISCRIMINATION FROM 2008 UNTIL PRESENT

3. Plaintiff claims a continuing course of unlawful employment discrimination from 2008 until present because the entire EEO process was tainted with prejudice by Plaintiff's immediate supervisor, Julie Evans, who was named a discriminatory party in all of Plaintiff's complaints from 2008 until present.   PATRICIA ALLEN EEO CLAIM OF RETALIATION, OF  July 22, 2008   Ex:#1 AGAINST Andrew Wilson, (White Male), (ii) Supervisor Julie Evans, (white female) (iii) ,Dr. G. Gupta, (manager), (iv)  Diaz-

Myers, (white female), Assistant Director. The EEO Claim was brought because Supervisor Evans, after April 30, 2008 refused to protect her from her assailant, Andrew Wilson's outburst on June 04,2008, when he violently exclaimed his hate for the African American Race in a violent manner. Evidence that Supervisor Evan's custom of protecting Mr. Wilson and condoning his violent behavior in the workplace is expressed by one of Mr. Wilson's previous victims, Jessica Escobar, TD Case No# BEP  08- 0645-F, Ex.#2, infra. At (7) . After the April 30, 2008, where Mr. Wilson kicked a medal trash can at Plaintiff Supervisor Evans took no corrective measures to protect Plaintiff Allen from Mr. Wilson. Mr. Wilson maintained striking distance with Plaintiff Allen because he was moved around the corner from Plaintiff, in another office. See Rachelle Wright's Declaration TD CASE No#-08-0645 -F Tab 10. Also, see **Gary Cloth** Declaration, Exhibit #6. Plaintiff Allen's second Complaint against Supervisor Evans was for retaliation for prior EEO activity when on April 20,2009, she was denied her career ladder promotion and its monetary compensation to GS -7 Supply Technician. See Ex#4, Allen's EEO Complaint Against Julie Evans, Investigative File TD Case ID#BEP-09-0743-F


4.  Because of her Race, Black Female  African American, dark complexion, Defendant, and its employees, discriminated against Plaintiff.

5.  The racial discriminatory acts and hostile work environment, retaliation and harassment continued from 2008 until present.

6.  As a direct result of the above discriminatory acts and omissions to act, Plaintiff has suffered severe adverse employment consequences which include, but are not limited to

financial harm, severe mental and emotional distress in the form of panic attacks, severe nervousness, constant fear of being assaulted and battered in the workplace, after having been assaulted and battered, in the workplace, by a co-employee Andrew Wilson, who acted at the encouragement of Plaintiff's supervisor, Julie Evans,  a named discriminatory party to Plaintiff's EEO Complaints.

## V. <u>Participants in the cause</u>

7.  Patricia Allen, ("Allen") is a Black Female, an Employee of the U.S. Department of the Treasury, Bureau of Engraving and Printing ("BEP"), in Supply Material Technology at grade, GS (7) Step 01. Ms. Allen's many years of employment with the BEP, the ("Agency") is without infraction and disciplinary action.  As an employee of the Agency, Ms. Allen has suffered a continuation of hostile work environment since April 30, 2008, until present for engaging in protective Equal Employment Opportunity Activities. Ms. Allen filed Unlawful Equal Employment Opportunity Complaints (EEOC) against **Andrew Wilson**, (white male), Chemist, **Julie Evans** (white female), manager, **Dr. G. Gupta**, Office Chief and **Judith Diaz-Myers**, (white female) Assoc. Director of Technology. **Julie Evans**, at all relevant times herein, Supervised *Ms. Allen* and *Mr. Wilson*. **Julie Evans** used Mr. *Andrew Wilson* (Mr. Wilson) as her agent to harass and create a hostile work environment for Ms. Allen, after the event of April 30, 2008, when Mr. Wilson admitted to kicking a metal trash can with the specific intent to strike Ms. Allen.  Ms. Evans acknowledged Mr. Wilson's tendency to lose his temper without provocation with a deadly intent.  By Agency's Regulations and Guidelines prohibiting discrimination and harassment in the workplace, Ms. Evans and the other ("Discriminatory parties"), were authorized with the responsibility to take corrective actions against Mr. Wilson for his workplace violent behavior against Plaintiff, and to eliminate the harassment and maintain a hostile free work environment for

Ms. Allen.  The Discriminatory parties failed, and otherwise refused, to take corrective action.

They did not secure a hostile free work environment for Ms. Allen from April 30, 2008 heretofore.

[1]The Hostile Work Environment was caused by Mr. Wilson's violent acts. The hostile work

environment, endured by Ms. Allen, was also endured by other Agency's employees.  There are

more than fifteen events that represent Mr. Wilson's creating and maintaining a hostile work

environment through his violent and intimidating behavior, often with the use of his cane as a

dangerous; potential deadly weapon. The events stated herein do not reveal all of Mr. Wilson's

hostile work environment behavior.  Because the claims have been investigated on the EEOC level

with the production of an extensive Investigative File (IF), each event reference the (IF) is

explained in detail.  All events took place inside the Agency. Ms. Allen's claims are supported by

facts and evidence. The following is extrapolated from the extensive investigative file of more than

one thousand pages, and is intended to be a comprehensive synopsis of the investigative file for

judicial economy and efficiency, though extensive per se.


V.       **<u>JURISDICTION</u>**

8. Ms. Allen has exhausted her administrative remedies, as to all claims and causes,  as

required for a trial *de nova* , as provided for under Title Vll,   of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Sec. 20000e <u>et</u>  <u>seq</u>., specifically 42 U.S.C. § 2000e-5; 42 U.S.C. § 2000e-16

© and 29 C.F.R. § 1614.407, which provide for relief against discrimination in federal employment

---

[1]

On June 18, 2008 Mr. Wilson frighten Complainant with his presence. By Email on June 19,2008, Complainant, MS. Allen wrote to *Julie Evans and Gouta* (" I want to know why Andy have come into our office 201-26 every day during lunch time to wait on Rose, he was here yesterday, June 18th and today, June 19th, 2008. I am very much afraid. Andre here are two more names that had words with Andy…")

and allow Ms. Allen to file suit in federal court against the head of a federal government department, for a trial *de novo,* pursuant to 42 U.S.C. § 2000e-3(a), as amended, which prohibits retaliation reprisal against an employee for pursuing her rights. Each of Mr. Wilson's discrete discriminatory acts against Ms. Allen was outrageous in character, and extreme in degree, and went beyond all possible bounds of human decency. Therefore, Plaintiff (Ms. Allen alternatively-Plaintiff-Complainant) alleges   common law claims of intentional infliction of emotional distress, negligent inflection of emotional distress, attempted physical and verbal assault and battery with a dangerous and deadly weapon. The common-law claims are not independent cause of actions. Their purpose is to emphasize the severity of Mr. Wilson's acts, which at common law, would amount to an assault and battery. The Agency's failure to take corrective action constitutes gross negligence, willful and malicious neglect, and failure to supervise the behavior of a known admittedly out of control employee. The Agency classified Mr. Wilson as an ("out of Control Employee").

## VI.     **VENUE**

9. Venue is proper in this Federal District Court because the claims arose in the District of Columbia.

## VII.                         <u>**PARTIES**</u>

10.  Plaintiff, a Black female, is a citizen of the State of Maryland.

Honorable Steven Terner  Mnuchin -is the Secretary of the Department of the Treasury within the meaning of 42 U.S.C. Sec. 20000e-16. The cause occurred under *Larry R. Felix*, who at all times herein was the director of BEP.  Honorable Jeff Session is the U.S. Attorney General, and

Honorable Jessie K. Liu is the U.S. Attorney for the District of Columbia.  All named officials of

the Department of the Treasury, Bureau of Engraving and Printing, are responsible for the acts of

discrimination against Plaintiff. Julie Evans, Plaintiff's immediate supervisor, and others, as

named supra, acted within the scope and course of their employment. Their acts and omission, as

stated herein, were those of the Agency (BPE).

## VIII. EXHAUSTION OF ADMINISTRATIVE PROCEDURES OF ALL   CLAIM INCLUDING BUT NOT LIMITED TO RETALIATION FOR ENGAGING IN EEO ACTIVITIES

11 By Letter, dated March 05, 2018, the United States Equal Opportunity Commission gave

Plaintiff 90-days from March 05, 2018, the option to filed civil action for the EEO Claims in the

appropriate court with jurisdiction or to proceed in the EEO Administrative Process.  All claims

presented in the complaint were first presented to the informal and formal   EEO Administrative

Process before filing the same with this Honorable Court.

### STATEMENT OF FACTS
### EVENT ONE:
### APRIL 30, 2008

### On April 30, 2008 (Attempted Assault and Battery on Plaintiff, Ms. Allen by Mr. Andrew Wilson who kicked or threw a metal trash can at Ms. Allen with the intent to strike her in the head

12. On April 30, 2008, Plaintiff and agency employee, *Sireda Foster*, both African

American Females, were working and watching CNN on the Television. They were discussing

politics about the "gas prices being so high"). *Mr. Andrew Wilson*, not part of the conversation,

without cause or provocation, began to yell at Mr. Allen and *Sireda Foster* and either kicked or

threw a metal trash can at *Ms. Allen*. By a hand-written statement, *Ms. Wilson* wrote that *Ms. Allen*

8

"caused him to lose his temper, and that he kicked a trash can in her direction." Mr. Wilson acknowledged his kicking-throwing the trash can was wrong and apologized for it.   See Investigative File, (IF, Tab12, P#177). For Sireda Foster's statement, see (IF, Table 11, P#172 to 176).   The trash can went air born and barely missed making contact with Allen's person. Because of Mr. Wilson's action, Ms. Allen was frightened, intimidated and placed in fear for her life and safety. Immediately after the event, Ms. Allen reported the event to Supervisor Evans, who maintained a close friendly relationship with Mr. Wilson. Ms. Allen also reported the event to the Agency EEO Division and the Agency Security-Police- Division which falls under 5 U.S. Code § 5378 - Police forces of the Bureau of Engraving and Printing. Within days after Ms. Allen made the reports, Supervisor Evans exemplified an unfriendly attitude toward Ms. Allen. She spoke disrespectfully to Ms. Allen.  As a direct result of the event and Ms. Evan's disrespectful behavior, Ms. Allen was further intimidated, placed in morbid fear of her physical safety and suffered severe physical and emotional distress. Ms. Allen sought and received metal health care at Kaiser Permanente for the event related injuries. See Plaintiff Allen's hand written statement of April 30, 2008 at (IF, Tab#1, P#17.) For Ms. Allen's health care, see (IF, Tab#2, P#.85-86.)[2] For event one, April 30, 2008, Ms. Allen timely filed an EEO Complaint alleging she was subject to harassment based on race (African American), and sex (female) in violation of the Civil Rights Act of 1964

---

[2] The April 30, 2008 incident is presented for evidentiary purposes for the proposition that the Agency failed to take corrective action against Mr. Wilson, even after several years of his displaying workplace violence and that Ms. Evans, a named discriminating party, at all times remained Ms. Allen's supervisor, to whom Ms. Allen reported all subsequent EEO claims. From 2008 until just recently (2013) Ms. Allen and other employees complained to Evans of continuing hostile work environment caused by Mr. Wilson with no meaningful corrective action taken. Other workplace violent acts by Mr. Wilson in 2008 is revealed in the BEP Tab#2-B 08-75-F (IF-BEP) Bate# 147 Line (6) and 148 Line (10).

as amended. Ms. Allen also claimed discrimination based on retaliation for previous participation

in EEO activities.

**EVENT TWO**
**FIRST FALSE CLAIM BY SUPERVISOR'S FALSE STATEMENT**

13. Supervisor Evans falsely stated that she removed Mr. Wilson from striking distance of

Ms. Allen, after April 30, 2008 event. Ms. Allen's email, infra, is evidence to the contrary.

PROOF OF SUPERVISOR EVANS' FALSE STATEMENT
EMAIL OF MAY 08, 2008 EIGH DAYS AFTER 4/30/08 ALLEN REQUEST A MEETING

14. Contrary to the Agency's contention, after the incident of April 30, 2008, Julie Evans

claims she immediately removed Mr. Wilson from the second floor to the 6th floor of the Agency,

away from Ms. Allen. Ms. Evans did not immediately remove Mr. Wilson from physical striking

distance of Ms. Allen. Mr. Wilson remained always in striking distance of Ms. Allen.

**SECOND FALSE CLAIM BY SUPERVISOR EVANS**

**SUPERVISOR EVANS FASLY CLAIMED THAT SHE CALLED FOR A MEETING**
**WITH MS. ALLEN AND THAT MS ALLEN REFUSED TO ATTEND**

15. It was Ms. Allen who requested an immediate meeting with Ms. Evans after April 30,

2008 event. Ms. Allen wrote ("Mr. Wilson is still in close proximity to me, I am requesting a

meeting immediately to address my concerns and my safety.") See IF 08, 84. Eight days after April

30, 2008, Ms. Allen expressed her fears to Ms. Gupta in an email of May 08, 2008. ("As of this

morning Andrew Wilson is still occupying his desk in 201-28A where my desk is located. It is my

understanding that he was supposed to move to a different desk immediately. I am extremely

disturbed, frightened and upset that he is allowed to do as he will and is disobeying management

direction."). See IF, 08 at p.83. The harassment continued until and including June 4, 2008. See

bate#188.

## EVENT THREE

## JUNE 04, 2008

## ANDREW WILSON RACIAL HARASSMENT OF MS. RACHELLE WRIGHT

## ON JUNE 4, 2008, MR. WILSON HARASSED EMPLOYEE RACHELLE WRIGHT BY SAYING NO FUCKING WAY THAT A BLACK MAN WILL BECOME PRESIDENT[3]

## MR. WILSON HAS BEEN OBSERVED WATCHING INFORMATION ABOUT THE KKK ON HIS COMPUTER IN THE WORKPLACE.

16. ("Ms. Rachelle Wright, (African American, female) states the she has filed an EEO complaint against Mr. Wilson, based on her race and sex. Ms. Wrights' incident was like Ms. Allen's April 30, 2008 relative to Mr. Wilson's display of prejudice against the Black Race.  In both incidents, Mr. Wilson displayed racial remarks about Honorable Obama. Ms. Wright said Honorable "Obama had won the democratic vote", Mr. Wilson, then started cussing and saying that there was "no fucking" way that a black man will become the president"" pushing his fist and walking toward her. (IF Tab 10) and see (IF page 9). The incident with Ms. Wright, on the 6th floor Room 605 (Annex) took place on *June 04, 2008, proximately 34 days next to April 30, 2008.*  BEP Police **Officer, Stg. Henderson** investigated the event. **Stg. Henderson** reported that Mr. Wilson denied making any political statement. **Stg. Henderson** escorted Ms.

---

[3] ("On June 04, 2008, the same white male co-worker directed threatening and violent behavior toward two other Black female co-workers?"   . Allen's Declaration, also see IF, 08, p. 124 (6).  *Ib* at p. 120 (B)., *Id* at 75-76 , a detail account of the event.[3] See IF, 08, p.50 Incident Report.("...**it appears that Mr. Wilson's action- Workplace violence are escalating**") IF-08-p 51.

Allen and Ms. Wright to the EEOC Office.  (IF.P#14). The combined June 4th, 2008 and April 30, 2008 Events heightened Ms. Allen's fear of being violently attacked by Mr. Wilson. In writing and verbally, Ms. Allen expressed her fears to Ms. Evans. The Events were viewed by Agency ("as evidence in support of Plaintiff's allegation") of harassment and hostile work environment, but the Agency refused to acknowledge that the events had ("the effect of interfering with an employee's work performance, or creating an intimidating, hostile and offensive work environment").  See (Tab 3 IF, P#115, Tracey Banks, Branch Manager EEO Acceptance letter to M. Paulson, Jr., Secretary of the Treasury of October 08, 2008) Citing *Hicks v. Gates Rubber Company,* 833 F.2d 1406 (10th Cir.1987) *Snell v. Suffolk Co.* 782 F 2d 1094 (2nd. Cir. 1986); *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1974, cert. denied, 406 U.S. (1972).


**EVENT FOUR**

**AS EARLY AS 2008, OFFICER *HENDERSON WARNED* SUPERVISOR EVANS**

**("MR. WILSON'S WORKPLACE VIOLENCE WAS ESCALATING")**

17. By police report, Ms. Evans was warned that Mr. Wilson's violence was escalating. This was sufficient warning to justify immediate corrective action to prevent future similar violent behavior by Mr. Wilson in the workplace. See IF, 08, p.50 Incident Report. ("…it appears that Mr. Wilson's actions are escalating") IF-08-p 51.  As late as June 28,2012, the question was asked: ("*It seems to me that there is simply evidence that Andy Wilson has made it difficult for a number other employees to work in ECF QA, yet I have to wonder if anything short of hospitalizing another employee would induce management to take action to ensure that we are safe.*") In the same document, relative to Andrew Wilson's striking at Employee Cloth with his cane, it was confirmed that Mr. Wilson intended to make

physical contact with Employee Cloth with his cane: *("A few minutes later, when they were both in the paper lab---told Andy that Andy shouldn't joke in that way. Andy replied, in a very agitated manner, **"I wasn't joking" I witnessed this last comment and action by Andy.""**)* While Employee Cloth may have not feared Mr. Wilson because he believed that Mr. Wilson was joking, Mr. Wilson clarified the misconception by stating he was not Joking.   See Exhibit #7. Redacted Document dated June 27, 2012, and preceding exhibit #6

### EVENT FIVE

### JUNE 18, 2008 MS ALLEN'S EMAIL

18. On June 18, 2008 Mr. Wilson frighten Ms. Allen with his presence. By Email on June 19,2008, Ms. Allen wrote to Julie Evans and Gouta (" I want to know why Andy have come into our office 201-26 every day during lunch time to wait on Rose, he was here yesterday, June 18th and today, June 19th, 2008. I am very much afraid. Andre here are two more names that had words with Andy.

### EVENT SIX
### JUNE 23, 2008 CLEANING DETAIL

19. On June 23, 2008, nearly two months after the April 30, 2008 event, Supervisor Evans ordered Ms. Allen to perform an office clean-up, which was not part of her job description. Ms. Allen claimed the ORDER was retaliation against her decision to file the EEC Complaint against Supervisor Evan's friend, Mr. Wilson, in violation of Title V11 of the Civil Rights Act of 1964, as amended. Ms. Allen ("Alleged that she was being punished for filing her EEO complaint, when she was single out to perform the office clean-up. Ms. Allen asserts that only employees involved

in these incidents with Wilson are asked to participate in the office clean-up.") IF Tab 4) and (IF, page 9. ("Rachelle Wright alleged that Ms. Evans told Charlotte Lowe-Ma to ask her and Sireda Foster to clean up the lab, and all three had been involved in the EEO complaints against Mr. Wilson. (IF Tab 10) and at (IF. p10). Ms. Allen claimed she endured a hostile work environment relative to event five. (IF. P#26).

20**. Corrective Action**. Supervisor Evans suspended Mr. Wilson one day for the April 30, 2008 event. Supervisor Evans and the Agency took no action to separate Mr. Wilson from Plaintiff. The Agency and Ms. Evans falsely stated that action was taken to separate Mr. Wilson from Ms. Allen. Ms. Allen contradicts Ms. Evans' assertion. As of May 08, 2008, Mr. Wilson occupied a desk, where Plaintiff's desk was located, within striking distance of Plaintiff-Allen in 201-28A; Ms. Allen requested an immediate meeting with Ms. Evans and Gupta Goutam , as she expressed fears for her safety. See (IF P#83, 84), Plaintiff's email of May 08, 2008. Among the false statements by the Agency and Supervisor Evans with the pretext of corrective action are: (1) Ms. Evans falsely claimed that Plaintiff declined to attend a meeting. (IF Tab 5- 6). It was Plaintiff who requested a meeting with Super Evans and it was Supervisor Evans who declined to meet with Plaintiff; (2) falsely claimed that Mr. Wilson desk area was change as corrective action. (IF Tab 6). Mr. Wilson was simply removed around the corner from Plaintiff and remained in physical striking distance of Plaintiff. (3) Falsely stating Supervisor Evans Counseled Mr. Wilson and Complainant, Ms. Allen. (IF Tab 6). Supervisor Evans did not counsel Mr. Wilson and Complainant, Ms. Allen.

21. From June 23, 2004 until and including July 27, 2011, Plaintiff endured a hostile work environment because she constantly ran through the hallways and eating areas to avoid Mr. Wilson

and the certain violence against her if he could come in physical reach of her. For lunch and casual movement in the common areas of the building, Plaintiff, for security, would pare with other employees. Even with these precautionary measures, Plaintiff remained in constant fear of Mr. Wilson and dreaded coming to work every day.

### EVENT SEVEN JULY 27, 2011
### Mr. Wilson coughed in Ms. Allen's face

22. On July 27, 2011, Mr. Wilson intentionally walked up to Complainant  in the hallway and coughed in Complainant's face.**4**. Supervisor Evans acknowledged Mr. Wilson July 27, 2011 behavior violated the workplace policy against violence and harassment. Mr. Wilson had exemplified similar behavior in the past. Supervisor Evans had firsthand knowledge that Mr. Wilson's violence was escalating as predicted. See Memo. Dated 8/16/14-IF-11, P. 00242-43. The matter was closed with Mr. Wilson's apology.

### Ms. Allen's Transcript Re: Event July 27, 2011

23. ("That morning I was going down the hallway, and Mr. Andrew Wilson was coming the opposite way. And as I got closer, passing, passing him, he came over to me, from one side of the wall, and coughed in my face. And saliva came out, and he had this **smirk on his face** like he was relieved, you know") ("I was frightened, I was fear. I ran to the bathroom and I washed my face. I even tried to gargle my mouth out because I didn't know- we don't know what any of us germs that we have, and I didn't know what this man might have had when his saliva touched my face. I

---

4 "Mr. Wilson retaliated against me on July 27, 2011 coughed in my face. See IF 11-, Tab#2. P00096-97, my written statement. Jordan heard Wilson yelling and called Complainant a stupid idiot, IF 11-Bate#00098. Mr. Wilson apologized for calling me an ("idiotic" ) See Bate# at 000029-000030) which is found in  Complainant's  Supplemental answers to the Agency's discovery request of 11/19/13..

washed my face.")  See Ms. Allen's Transcript (TR) at p.28, L. 7-22, p.29, L 1-6. ("There should

have been some separation between me and Mr. Andrew Wilson from day one of 2008 when he

kicked the metal trash can towards me. No one did anything about that. So, what they did, it should

have been a separation.   He should have been in one building; I should have been in one building.

We should have been separated. No one separated us. That's what could have been done……….")

Tr.p.35, L21 -22, p.36, L 1-7.


## EVENT EIGHT July 28, 2011

### Ms. Evan's conversation with Gissentanna Maria about the July 28, 2011 event
### Julie Evans' Meeting with Maria Gissentanna

24.  On July 27, 2011, Ms. Julie Evans spoke with Maria Gissentanna (Ms. Maria) about
possible disciplinary action against Mr. Wilson. She claimed she advised Mr. Wilson to cover his
mouth when he coughed.[5] The conversation between Ms. Evans and Ms. Marla did not include:
(1) any separation orders for Mr. Wilson and Ms. Allen. Seven months later, next to July 27, 2011,
a separation order was issued on March 01, 2012, and one month after the February 23, 2012,
incident, infra... (2) Mental health Counseling was not discussed as corrective action for Mr.
Wilson.


## EVENT NINE AUGUST 29, 2011

### MR. WILSON INTIMIDATED MS. ALLEN BY WALKING UP AND DOWN THE
### HALL WAY OUTSIDE OF HER DOOR

---

[5] ("LatTer Pat. came  to my office  with **Officer Henderson** and indicated she was very upset and felt that Mr. Wilson
could be a physical threat to her. I have been up to talk with Marla Gissentanna   in LMR, to discuss the incident,
especially in light of past history between these two individuals a few years ago during the 2008 presidential campaign.
We are reviewing disciplinary action for Mr. Wilson that will be taken. I also advised Mr. Wilson that he should try
to cover his cough and that there are public health signs up in various transportation systems to instruct the public that
covering a cough helps to prevent spread of germs, saying "you should cover your cough" is not stupid.
Bate#000030.See IF Tab 43, Bate #00279.

25. On August 29, 2011 Mr. Wilson intimidated Complainant with his presence walking up and down the hallway outside her office.

("Mr. Wilson walked up and down the hallway past my doorway with an angry face, like he was waiting on me to come out. And the only time I would come out is when I could pair up with a co-worker to walk down the hallway.") Ms. Allen's Deposition Transcript: Tr. P. 52 L.18 -22.

26. Mr. Wilson was in physical striking contact with Ms. Allen who was stationed in an open cubicle with no door. Tr. P. 54, L1 – 8. Out of fear of retaliation through violence against her by Mr. Wilson, Ms. Allen did not report the incident and other similar incidents because she was afraid of Mr. Wilson. She felt helpless in that the Agency would not and had not protected her. . She simply avoided Mr. Wilson as she had for years. Tr.54, L5-8., because she thought nothing would be done based on the lack of corrective action attending the 2008 incident. Tr.54, L 21-22, P55. L- 1. ('I just avoided him") P55, L.8. There was no reason Mr. Wilson need to be in Ms. Allen's work area. Tr.56. L 1 -8.

## EVENT TEN

**Wilson following Ms. Allen down the hallway with his cane: 8/29/11-corroborated by Foster**

**Sireda -Declaration BEP -11-IF Tab 17, P. 00430, Line Q & A#18.**

27. ("The relocation, since 2008 has made it possible for Mr. Wilson to gain access to my person in a private manner. From 2008 until I filed my second EEO of August 29th complaint. Mr. Wilson has continued to torment me by entering the break room and stares at me and follow me down the hallway with his cane in hand") See BEP-11 IF Bate#00209. Para. #13.

## EVENT ELEVEN
## FALSE STATEMENT THAT MR. WILSON WAS REMOVED TO THE SIX FLOOR

### 28. No Removal to Sixth Floor Confirmed by Mr. Wilson and Complainant

(" **The sixth floor**, he didn't get removed from the sixth floor to just on the second floor until August 19th, 11. All this time , me and Mr. Wilson still was coming in contact with each other, and we should 'a been separated.")  Tr.61, L 22-62, L1-4.
(" Ms. Evans did not take corrective action in the form (of)  removing Mr. Wilson from the second floor after the July 27, 2011 incident")  IF 11 Bate#00209. Para# 14.

**Diane Cripps' Declaration IF 11- Tab #19- Bate#00447 Q&A #23 RE: 6th Floor**

29. Ms. Cripps confirms that Ms. Allen and she worked in cubicles on the second floor. Ms. Allen is accessible to Mr. Wilson. Much of their work assignments is on the second floor and the sixth floor. Ms. Evans' decision to Remove Mr. Wilson to the sixth floor was a pretext for corrective action but Mr. Wilson was never actually removed to the sixth floor, as he admits in his declaration. ("Across the Bureau, we need to have a work environment with honest communication with managers to remedy this unfortunate work culture") BEF-11 IF Bates# 00447. Question & Answer#22.

**EVENT THIRTEEN**

**SEPTEMBER 26, 2011 INCIDENT**

(There were two incidents that occurred on September 26, 2011

30. On September 26, 2011 Mr. Wilson intimidated Ms. Allen by coming into her work area and angrily staring at Ms. Allen.

**First Incident of September 26 2011**

31. (" Q. September 26, 2011. A. When he was-okay, I'll wait for you to ask. Q. And if you know what I am talking about please go ahead and explain that incident. A. When he kept coming in and out of my office? Is that what you're talking about? Q Um-hmm. A. He kept coming in and out .Q I'm sorry, "yes" A. Yeah, when he kept –September 26th, when he kept coming in and out of my office. And I sent several e-mails to Julie Evans and Dr. Gupta why Mr. Wilson kept coming in , looking at me, and eyes rollin' in his head, and , you know, looking like, you know, you know, he just wanted to intimidate me and put fear in me, you know?
A. I sent –I sent some e-mails about that"). See Complainant's Tr. P.62-63. Emails to D. Gupta and Julia Evans.") Tr.63, L18.-22, P.64, L 1 -2 (" I don't recall Ms. Evans responding back but I recall Dr. Gupta responding back")

**STATEMENT OF FOSTER SIREDA (01/13/2012**
**HOSTILE WORK ENVIRONMENT**
**MR. WILSON FOLLOWED BEHING MS. ALLEN**

32. ("I HAVE SEEN Mr. Wilson follow behind the Complainant during lunch hours to the BREAKROOM. ") See Foster Sireda Declaration BEP -11-IF Tab 17, P. 00430, Line Q & A#18. (**Question**: How would you describe your personal work environment based on your own personal experience in your work area? **Answer: After the incident that the Complainant and I were involved in with Mr. Wilson kicking the trash can at us I do believe that we work in a hostile environment. No one will ever know what Mr. Wilson will do next."**). *ld,* at Bate No. 00431, **BEF-11- IF.**[6]

**EVENT FOURTEEN SECOND EVENT**
**9/26/2011**

33. **Second Incident of September 26 2011**: Tr.  At P 66, L. 22 to  p. 67,  L 1 – 8. Complainant email states 67, L19 ("  Good after noon Julie per our conversation this morning about Mr. Wilson coming in the lab on Monday 9-26-11 while I am working with SVA he should not be coming in any of area (where)  I am work" (A. Yeah, this is two different—this is two different thing. This is later that day. Q. So there were two incidents that day  .A. Yes.… ") ("And this right here us when I'm on the sixth floor, when I e-mailed Ms. Julie Evans about Mr. Wilson and I up on the sixth floor, knowing that I had to come in there to do some work, why he in there" So this is something different.") Tr. 67, L19 to 68, L 1.

34. Complainant made it clear that the September 26, 2011 consist of two incidents and the

August 24, 2011 incident relative to Mr. Wilson's being in her presence are separate incidents. Tr.

P. 69.

**EVENT FIFTEEN**
**OCTOBER 27. 2011 INCIDENT**

35. October 27, 2011, when he intentionally came where Complainant's was eating lunch

with the excuse that he came into the area to get his mail.

---

[6] William Baum mention that: ("Mr. Wilson threw a book near the feet of a Filipino female employee (now retired)") and was counseled by his immediate supervisor.  BEF-11, Tab 18, P.00436, Answer to question 10.

36. At her deposition, Complainant, relative to her E- mail statement, exhibit #6, reflecting the occurrence of 10/27/11.

("As the e-mail say, um, um, Robert Creekmur and I was having lunch 12:19. Mr. Wilson burst through the door. He came in-he burst through the door going to his mailbox, and I jump up and ran out. Q. So was the door closed when he came in, and he slammed it open" A. Well, yeah, the door-yeah, the door was closed. Q. Would he have any reason to know that you were in there eating your lunch, if the door was closed? A. The door was closed. It's a big glass. You get to see people in there before you even go in. It's like a door with no window glass. He could see who was in there before he got in there.") See Tr. P. 71, L 13 –22 P.72, L. 1-6.

( Tr.P. 73, L7-10. " Q. So if Mr. Wilson came to the door, if he looking in the window he would have seen you sitting there? A. Yeah, it's a big, it's a big opening--- ")

37. Plaintiff ("Complainant") Allen wrote to *Felix Larry* on August 01, 2011 ("On Wednesday, July 27, 2011 another altercation occurred between Andrew Wilson and I. This being the second altercation since we have been working together. I am contacting you because after pursuing this with my manager, Julie Evans and my Office Chief, Dr. Goutam Gupta, no action has been taken.  I have already contacted the police regarding this incident, and incidents between him and other coworkers. I felt that management is not seriously handling this situation and having now feel threatened in my work area on several occasions by Andrew Wilson, I feel that I now must take action to protect myself. I took the steps through management and called a meeting with Judith Diaz –Myers, the Associate Director …. However, I was told that due to BEP protocol that is out of her hands because I had already called the Chief of Security, Will Levy 111. I was told that he was meeting with supervisors on Thursday to discuss the incident and to formulate an approach to intervene into the situation so that I do not feel threatened. I have not received an update about the meeting. ") See Agency Bate No. 00279.  Complainant's Exhibit 22 (provided in interrogatory response - 8-01-2011) For an overview of the action see Complainant Allen's Declaration which is incorporated in the instant document: BEP -12-0696-F Bate No. 00294 to 00319.

## EVENT SIXTEEN DECEMBER 23, 2012

## RETALIATION THROUGH ATTEMPTED ASSAULT AND BATTERY WITH A DANGEROUS –DEADLY- WEAPON

38. On February 23, 2012, at about 9:30 AM on the 6th floor of the Agency, Ms. Allen was at the elevator. Then and there, Mr. Andrew Wilson approached Ms. Allen and lifted his cane in a violent manner and struck twice at Ms. Allen's head with the cane. Ms. Allen retreated in fear. Ms. Allen begged Mr. Wilson to not hit her with the cane. But for Ms. Allen's retreat, Mr. Wilson's cane would have made physical contact with Ms. Allen's head. Mr. Wilson's decision to strike at Ms. Allen twice with his cane was an offensive, malicious, intentional attempted assault and battery on Ms. Allen's. Mr. Wilson acts were retaliation against Ms. Allen. Mr. Wilson's intent was to dissuade Ms. Allen from reporting his discriminatory and hostile and offensive behavior. Mr. Wilson's acts of violence were unwelcome and unprovoked by Ms. Allen. Mr. Wilson specifically intended to inflict grievous bodily harm on Ms. Allen's person. Mr. Wilson's violent acts against Ms. Allen were in retaliation against Ms. Allen for Ms. Allen's previous complaints of unlawful employment discrimination against Mr. Wilson and Ms. Julie Evans and other Agency high level employees. Mr. Wilson's violent intentional acts placed Ms. Allen in fear of imminent harm.

## Severity of the Act is defined by the District of Columbia Code Sec. 22-404

39. Mr. Wilson's striking at Ms. Allen twice with his cane with the intent to inflict upon Ms. Allen grievous bodily harm constitute an attempted physical assault and battery under District of Columbia Code Annotates section 22-404. [7]

---

[7] Assault or Threatened Assault In the District of Columbia, it is a misdemeanor to:

## MR. WILSON ADMISSION

40. Mr. Wilson admitted that he lifted his cane at Ms. Allen. He stated he lifted his cane as a nervous condition. This indicates a physical non-voluntary action. ("*What she saw and did not understand was an involuntary muscle reaction caused by a mile anxiety attack.*") See foot note #8, Mr. Wilson's sworn statement. In contrast, Mr. Wilson stated that he lifted his cane in self-defense. This indicates an intentional and voluntary physical act.

41. **Admission of a party**: Mr. Wilson's statements were made under oath as part of the Agency's investigative files. Under the Federal Rules of Evidence 801 (d) (1) (A), Mr. Wilson's statements are non-hearsay. Mr. Wilson lifting his cane is also a statement. Mr. Wilson's two declarations (statements) are inconsistent in explaining why he lifted his cane at Ms. Allen. Under Federal Rules of Evidence 801 (d) (1) (C) (2), Mr. Wilson's statements (declarations) are an Opposing Party's Statement which is non-hearsay and constitute an admission to the fact that Mr. Wilson lifted his cane at Ms. Allen with the intent to strike her with the cane. The Advisory notes distinguishes hearsay from a non-hearsay statement.

42. **Pretexaul Artifice:** Mr. Wilson's non-discriminatory statement for lifting his cane to strike Ms. Allen in self-defense is a pretextual artifice. The true reason for Mr. Wilson lifting his cane was to strike Ms. Allen in the head with the cane because of Ms. Allen's previous EEO activities. By Mr. Wilson's admission, he

---

Assault another person, or threaten someone in a menacing manner.
(DC Code Ann. § 22-404.) Under general legal principles, an assault is a physical act or a show of force that puts another person in fear of imminent harm or offensive physical contact. For example, hitting someone with a fist could be considered an assault, and so could throwing a beer bottle at an individual. Since the District's laws criminalize both assaults and threats, neither injury to nor physical contact with the victim is necessary to violate Washington, DC's assault law.

states that Ms. Allen screamed that Mr. Wilson was to stay away from her at the time he lifted his cane.[8] Ms. Allen's scream indicates a person in fear rather than a person that is in an attack mode.

### 43. <u>Agency's acts of omissions and intentional refusal to act to prevent the harassment and physical threats by Mr. Wilson against Ms. Allen</u>

**<u>Supervisor Julie Evans Attempted Cover-up</u>** for Mr. Wilson's December 23, 2012 attempted assault and battery on Ms. Allen. Ms. Evans stated that Mr. Wilson was rushing to the elevator to timely get to a preschedule meeting. Ms. Evan's statement was intended to give a reason for Mr. Wilson rushing toward the elevator and lifting his cane as if he was trying to preserve the elevator through the onboard person to keep the door open. Ms. Evans' statement is contradicted by Mr. Wilson's admissions. Mr. Wilson also states that in response to Ms. Allen at the elevator, he, Mr. Wilson, did nothing on his part, ("without any action on his part.")

### <u>EVENT SEVENTEEN</u>

### <u>ADDITIONAL COVER-UP BY SUPERVISOR EVANS</u>

---

[8] SWON STATEMENT OF ANDREW WILSON THE DISCRIMINATORY PARTY Dated 3/ 15/ 13 BATE NO. 00385; Appendix page 21 to 27.

Claim 1 in the investigative report as to Mr. Wilson: ("On February 23, 2012, a White male coworker approached Complainant, raised his cane and hit at her twice, all the while yelling at her?") Question 15. To Mr. Wilson "(Did you engage in the behavior as described in claim 1 above? If so, why?) Mr. Wilson's Response: ("You can't hit someone from 10 feet away. What she saw and didn't understand was an involuntary muscle reaction caused by a mild anxiety attack.") End of quote.

44. Supervisor Evans and the Agency's Department of Police attempted to cover-up Mr. Wilson's attempted assault and battery on Ms. Allen and to prevent Mr. Wilson from being arrested. The attempted cover-up occurred when an Agency Police Officer falsely accused Ms. Allen of saying that Mr. Wilson actually hit her with the cane. At all times, the Officer and the Agency knew that Ms. Allen never said that Mr. Wilson hit her with the cane. Supervisor Evans had firsthand knowledge that Ms. Allen said Mr. Wilson (struck at her).[9]

---

[9] Julie Evans' Sworn Statement.

**See Bate No. 00366 answer to question 23**
**Date of Declaration 3/08/13**
**Herein Appendix 1 to 15**

(Response to question 23: *I was in my office that morning when* **Police Officer, Keith Anderson,** *came in to inform me that Ms. Allen was at the Police Operations Center,* **around 9:30.** *He said that the complainant had reported being* <u>**struck at**</u> *and that an* **arrest** *of Mr. Wilson might result. He received a call that she had gone on to the Health Unit and I went to see her. She was quite upset.") (Please see hand-written notes from Feb. 23, 2012, also later interviewed by* **Timothy Brymn** *in a formal investigation). See* **Bate No. 00366,** Supervisor Julie Evans' Declaration.

Ms. Evan's statement continues: Answer to question 24: (" Mr. Wilson's version of what happened is that she said in an angry tone that he was supposed to stay away from her. He said that he stopped short and wasn't sure what she was going to do and *picked up his cane in front of* him to protect himself…I was present when the officer questioned Mr. Wilson ….he demonstrated how he held his cane in defensive gesture when she yelled at him and said he stayed a good distance away from her") See Julie Evan's Declaration, Bate No. 00367, Appendix, page 10.

The Agency intent to arrest Mr. Wilson for striking twice at Ms. Allen with his cane serves as notice to the Agency that Mr. Wilson had committed a criminal offense. No sane Agency would overlook such an offense with the issuance of a separation order as a remedy. At this time, there was no mention of any possible false statement having been made, when Mr. Anderson was in Ms. Evans' office. Why did **Mr. Anderson** have to meet with Ms. Evans to inform her that Mr. Wilson might be arrested? He did not need her approval to arrest Mr. Wilson.

The referenced "hand-written notes from Feb. 23, 2012, " appears to be the following found at **Bate No. 00514**, Appendix, Page 16. Quote: ("Feb.23, 2012. **Keith Anderson, Police Officer** confronted coworker Elevator about 9:30 and told him "you are supposed to stay out of my way very angry tone. He felt threaten. About 10 feet, **he raised cane in**. "we need some kind of accommodation" Health Unit Center. **Pat reported that Andy swung the cane at her**. Wills not be back to BEP as long as he works here. Call Marla").End of quote

MEMORANDUM FOR PAUL DUPONT, ACTING CHIEF OFFICE OF MATERIAL TECHNOLOGY; FROM TIMOTHY GERALD, ASSISTANT CHIEF OFFICE OF
<u>SECURITY: SUBJECT: COMPLETED INVESTIGATION PERTAINING TO THE ALLEGATION, PROVIDING FALSE TESTIMONY –PATRICIA ALLEN.</u>
TIMOTHY BRYMN'S MEMORANDUM DATED SEPTEMBER 20, 2012

_____

45. THE referenced ("later interviewed by **Timothy Brymn** in a formal investigation') is not

found. However, there is a Memorandum dated for Paul DuPont, Acting Chief Office of

Materials Technology, from Timothy Gerald, Assistant Chief Office of Security, Bate No. 00549-

00550, Appendix, page17 -18.,

> 46. **The Memorandum reads**: ("On February 29, 2012, THIS Officer of Security (OS) reviewed information relayed on a police incident report indicating Patricia Allen stated she was physically assaulted while on duty in the BEP. On a supplemental report, it was alleged Allen changed her story, indicating she was only threatened while on duty.  On March 2, 2012, this investigation was tasked to the Product and Investigations Branch (PIB). ……A brief synopsis of the investigation reflects on February 23, 2012, Allen alleged to have been involved in a confrontation with another BEP employee on the 6th floor of the Annex building. Following the confrontation, *Allen* allegedly reported being physically assaulted by Andrew Wilson to BEP Police Sergeant *Zachary Henderson*. During medical treatment, Henderson alleged Allen changed her initial story indicating Wilson raised his cane at her in a threatening manner. ***Henderson*** *indicated he may have misunderstood what Allen said due to her emotional state at the time she made the initial report.* Another BEP employee present prior to Allen making the initial report indicated she heard Allen state she was physically assaulted. *This employee also indicated she may have misunderstood what Allen said due to Allen's emotional state. Allen denied the allegations she told anyone she was physically assaulted by Wilson"*) End of quote.

 **MEMORANDUM DATED MARCH 11, 2013 FOR DANA ANDREW WEST, EEO INVESTIGATOR TREASURY COMPLAINT MEGA CENTER; FROM TROY HIGH, DIDISION MANAGER SECURITY AND INVESTIGATION DIVISION. SUBJECT: ALLEGEDLY PROVIDINF FALSE TESTIMONY, PATICIA ALLEN…**

 Troy Highs' memorandum reads as does **Timothy Brymn's**. However, **Troy High's**

memorandum, in the penultimate paragraph states the following:

(" *Wilson alleged Allen came off the elevator, advanced towards him yelling and screaming* ***without any action on his part****. There is no camera coverage outside the 6th floor annex elevator banks to corroborate Allen's or Wilson's version of the events*") End of quote.

FEBRUARY 23, 2012 STATEMENT OF **ANDREW WILSON-**THE ACCUSED
DISCRIMINATORY PARTY
SEE BATES NO. 00511, Appendix page 19 -20

47. The name of the Police Officer who falsely stated that Ms. Allen said that Mr. Wilson hit her with his cane is *Officer Henderson*.

## EVENT EIGHTEEN
### AGENCY'S FALSE ALLEGATIONS AGAINST MS. ALLEN
### Criminal Charges to be brought against Ms. Allen

48. Based on the known false allegations against Ms. Allen, the Agency conducted an investigation on the allegation that Ms. Allen had made a false statement.

The investigation concluded that Ms. Allen never made a false statement.

49. **Sham investigation**:  The investigation was a sham with the intent to dissuade Ms. Allen from filing further EEO Complaints against Mr. Wilson and the high-level Agency Officials. The Agency false allegations were of a criminal nature that carried a penalty of imprisonment and termination of employment for Ms. Allen. The false allegations frightened Ms. Allen and caused her to be restrain from reporting to the Agency's Police Department or any Agency Official any discriminatory acts or workplace violence by Mr. Wilson or any other agency employee. She was

---

Mr. Wilson statement reads as follows: *(…. WHEN Ms. Allen saw me come to enter the elevator, she told me in a very angry tone of voice that I was supposed to stay away from her. Not knowing what she might try to do, I raised my cane to **protect myself**. I never came any closer to her or threat her…. When I caught the elevator down to the second floor, she did not get on the same elevator.")*. See at tab 25, Bate No. 00511-00512 End of quote.

 **Further see SWON STATEMENT OF ANDREW WILSON THE DISCRIMINATORY PARTY Dated 3/ 15/ 13 BATE NO. 00385; Appendix page 21 to 27, (Infra at foot note#8).**

afraid she would be falsely accused of lying and placed in jail and lose her job.   Further, the

investigation was a sham in that it only included inquiries as to whether Ms. Allen had lied that

Mr. Wilson *hit her with the cane*. The investigation did not include an inquiry into Ms. Allen's

statement that Mr. Wilson *struck at her twice with the cane*. [10]

### **EVENT NINETEEN**

### **NO FINDINGS THAT MS. ALLEN MADE FALSE STATEMENT**

51. BY MEMORANDUM of October 19, 2012 FOR TIMOTHY GERALD
ASSISTANT CHIEF OF SECURITY-FROM PAUL J. DUPONT, ACTING SHIEF

---

[10] THE AGENCY'S SHAM INVESTIGATION OF THE FEBRUARY 23, 2012 ATTEMPTED
ASSAULT AND BATTERY ON MS. ALLEN BY MR. WILSON

The Agency, with the assistance of *Julie Evans*, named discriminatory party, and supervisor of both Ms. Allen and Andrew Wilson, along with Agency Police Officers, Department of Security, falsely stated that Ms. Allen reported to *Mr. Henderson* and another employee that **Mr. Wilson stuck Ms. Allen with his cane** *but later changed her story to* **Mr. Wilson struck** *at her with his cane*. Then, Officer *Henderson* changed his story to say that he might have misunderstood Ms. Allen as did the other employee. The Agency's Department of Security investigation of the 23rd event focused, not whether Ms. Wilson struck twice at Ms. Allen with his cane, but rather, on *Officer Henderson* and the other employee's statements accusing Ms. Allen of lying. The accusation of lying omitted the fact that Ms. Wilson actually struck at Ms. Allen twice with his cane.

50. The conclusion of the investigation found that Ms. Allen did not state that Mr. Wilson

struck her with his cane. The investigation report was silent on whether Mr. Wilson struck at Ms.

Allen twice with his cane. Ms. Allen, not Mr. Wilson, was under criminal investigation, with the

Agency's intent to destroy Ms. Allen's credibility and terminate her employment. Falsification by

either Mr. Wilson or Ms. Allen of what transpired   required termination of employment. The

Agency blamed the victim, Plaintiff Patricia Allen.

**OFFICER OF MATERIALS TECHNOLOGY-SUBJECT ("BEP Case Number: DCF-SI-2012-017**

52.Regarding Patricia Allen: The memorandum reads ("Based on my review of the report of Investigation for the subject BEP case number, there is no evidence to indicate that Ms. Allen provided false testimony. The police officer *Sergeant Zachary Henderson* as well as other witnesses state that they may have misunderstood what Ms. Allen said due to her emotional state. Therefore, since there is no clear case that Ms. Patricia Allen provided false testimony, no administrative action will be taken against her") End quote. See Bate No. 00552, Appendix at page 30.

53. The conclusion that Ms. Allen made no false statement did not negate the fact that because of the false allegation Ms. Allen suffered anxiety and fear of imprisonment and a hostile work environment.

**EVENT TWENTY**
**THE FEBRUARY 23, 2012 ATTEMPTED ASSAULT AND BATTERY BY MR. WILSON ON MS. ALLEN WAS NEVER INVESTIGATED AS TO WHETHER MS. WILSON STRUCK TWICE AT MS. ALLEN WITH HIS CANE**

54. The Event of February 23, 2012 was never investigated as to the Mr. Wilson's acts of striking twice with his cane at Ms. Allen. This is so, even though Mr. Wilson gave conflicting and contradictory statements for his lifting his cane. Each of Mr. Wilson's conflicting statements and contradictions indicated Mr. Wilson, not Ms. Allen, made false statements for investigatory purposes.

**EVENT TWENTY-ONE**
**No Corrective Action was taken as to the December 23, 2012 attempted assault and battery**

55. On the same day of the event- February 23, 2012, before any investigation had commenced, the Agency's response to Mr. Wilson's attempted assault and battery on Ms. Allen, was to issue an order directing Mr. Wilson and Ms. Allen to voluntarily remain 10 foot away from each other in the workplace. The 10-foot order was a sham pretextual artifice and an act of retaliatory discrimination for Ms. Allen's previous EEO Activities. The Order was to protect Mr. Wilson with a defense. The defense was intended as follows: If Ms. Allen defended herself against Mr. Wilson's future attacks, the Agency could defend that Ms. Allen breached the 10-foot order. [11]

56. The 10 Foot order was known to be impossible to enforce in a workplace. The authors of the 10 Foot Order knew that Mr. Wilson and Ms. Allen had to maintain the same workplace environment at the Agency on the same work shift and work space on the sixth floor of the Agency. The authors of the 10-foot order also knew that Mr. Wilson would remain always in reaching contact with Ms. Allen and that the Order did not and could not prevent Mr. Wilson from attacking Ms. Allen. Further, the authors of the Order knew that prior to the issuance of the 10-foot order,

---

[11] THE AGENCY TOOK NO CORRECTIVE ACTION IN RESPONSE TO MR. WILSON STRIKING TWICE AT MS. ALLEN WITH HIS CANE ON FEBRUARY 23, 2012. Notwithstanding the result of the investigation, it was Supervisor *Evans'* responsibility to take corrective disciplinary measures. Not only did *Ms. Evans* failed to investigate Mr. Wilson's false and conflicting account of the event of February 23, 3012, she completely ignored Mr. Wilson's admissions and conflicting and contradictory reasons for lifting his cane at Ms. Allen. Rather than recognizing the Feb. 23rd event as an attempted assault and battery with a dangerous-deadly weapon, classified the entire event as a personal conflict. (*The advice from Labor Management Relations was that this was an interpersonal conflict and that an Order of Separation for both parties should be put into effect immediately.*" See Evans' Declaration, Bate No.00369, answer to question 32. Appendix page 12.

Ms. Allen had always distanced herself more than 10 -foot from Mr. Wilson. The Authors of the

Order and Ms. Evans knew that Ms. Wilson often follow Ms. Allen in the workplace and stalk her

in the workplace and that Ms. Allen paired with co-workers while in the common area of the

workplace for safety from Mr. Wilson.  The Agency, the Authors and *Ms. Evans* admitted that

they knew in advance that the 10-foot order was impossible to enforce and that there was absolutely

no intent to even try to enforce the 10-foot order. See foot note# 12.

--------------------------------

[12] Appendix page 12.

**Ms. Evan's response to question 33: Appendix page 12.**

 ("Yes. A Violent Intervention Team was held on February 23, 2012. *William Levy,* Chief of
Security, *Sonya White*, Legal Counsel, *Maria Gissentanna*, Labor Management Relations, all
worked at the Washington, DC location were involved in the discussion that advised issuing 10-
foot rule letter. Labor Management Relations prepared the letter to be issued to Ms. Allen and Mr.
Wilson.") End of quote.

 57.  The members of the Violent Intervention Team, ("Team") without an investigation, on the

same day Mr. Wilson struck twice at Ms. Allen with his cane, February 23, 2012, decided the

appropriate remedy for such violent acts was the issuance of a 10-foot separation order.  The Order

was not corrective action, not even to the point of discussing whether the 10-foot order was

adequate protective action.  No future corrective action was taken.


 **10- Foot Separation Order of March 1,2012**

MS. ALLEN FOR MORE THAN THREE YEARS REMAINED MORE THAN TEN
FOOT FROM MR. WILSON WHO FOLLOWED IN THE WORKPLACE

 58. The 10-foot separation order, which preceded the investigation of the February 23,

2012 event, was in no way a proper response to Mr. Wilson's violent actions. Ms. Evan and the

entire Team understood as long as Ms. Allen and Mr. Wilson occupied the same working shift at

the Agency, they would inevitably confront each other. The confrontation would occur even with

_____

Ms. Allen's best efforts to avoid Mr. Wilson. Since April 30, 2008, when Mr. Wilson kicked the

metal trash can with the admitted intent to strike Ms. Allen, Ms. Allen has tried to avoid Mr.

Wilson in the workplace.

**MR. WILSON VIOLATED THE 10 -FOOT ORDER WITH MS. EVAN'S KNOWLEDGE
AND WITH IMPUNITY**

59. **Statement from Julie Evans to Andrew Wilson dated June 04, 2012: Subject: Reminder
about 10-foot rule. See Bate No. 00532, Appendix page 28.**

The statement reads:

> (" I want to remind you about the 10-foot rule requirements and how you could
> have better handled going into the Durability Lab this afternoon. I heard that you
> saw Pat Allen go into the 605A area and shortly afterwards went into deal with
> (Weatherometer). Rather than assumed that she had gone into the BPS room, you
> should have called the Durability Lab to check. When you entered, and saw her
> there, you should have turned around and came back out, then you could have called
> me or ask to be notified when she left. Please be mindful of this requirement in the
> future.") End of quote.

60. Mr. Wilson had no respect for the 10-foot order and had no fear of any

consequences for disobeying the order.

**SUPERVISOR EVANS ADMITS THAT THE 10-FOOT ORDER WAS NOT
CORRECTIVE ACTION THROUGH HER APRIL 04, 2012 MEMORANDUM TO
ANDRE FAULK, EEO COUNSELOR**

63-A. In relevant part, the memorandum reads:

> (" Moreover, previous action had been taken within the control of the OMT
> to separate their work area and minimize their contact. In further
> discussion with Ms. Allen, Bureau management has come to understand
> that Ms. Allen is fearful of Mr. Wilson's presence. *It is my understanding
> that Legal Counsel is working with Human Resources and Ms. Allen to
> facilitate finding Ms. Allen an equivalent job position to provide a permanent
> solution, as occasional encounter cannot be prevented in OMT areas.")* End
> of quote. See Bate No. 00529, Appendix, page 29.

.

## EVENT TWENTY-TWO
## TEN FOOT ORDER OF MARCH 01, 2012

62. Approximately 10 days after February 23, 2012, the Agency issued the 10-Foot Separation Order. The order was issued by many of the named discriminatory parties.  Less than 14 days later, next to March 01, 2012, on April 16, 2012, Ms. Allen, afraid to file an EEO Complaint against Mr. Wilson, elected to contact *Ms. Nicole Washington*, Agency's legal counsel, to report Mr. Wilson's continuing intimidation and threats of violence toward her. Also, less than 45 days after April 16, 2012 incident, on June 04, 2012 Mr. Wilson, again, violated the 10 Foot Order. See Bate No. 00532, Appendix page 28.


## EVENT TWENTY-THREE
## APRIL 16, 2012

**COMPLAINANT'S APRIL 16, 2012 E-MAIL TO WASHINGTON, NICHOLE- MR. WILSON'S THREATENINGLY SWING HIS CANE IN THE HALLWAY Complainant's Interrogatory Responses Bate# 000073 and 000079.Also See BEP-12- IF Bates#99531**

63. On April 16, 2012 Mr. Wilson threaten Complainant with his cane.

("About 12:40 today Mr. Wilson was coming down the hallway on the second floor and me and a co-worker Petrina Lefridge was also coming down the hall the opposite direction from him. I and Ms. Lefridge saw Mr. Wilson take his cane and slammed it to the floor then I saw him pick his cane back up and swung it in the air and also mumbling some words which I really couldn't make out what he was saying then I immediately turned around and went the other way. Mrs.

Washington something really needs to be done to him because he is really scaring me and I shouldn't have to come to work every day always looking behind my back hoping he's not there. If you can help me correct this bad situation I would gladly appreciate it. Also, I did report it to my Supervisor on today, which is Mr. Baum.") See Bate #000079 Memo, from Complainant, Patricia Allen, to Washington Nichole, dated April 16, 2012. In the same memo. Ms.  Julie Evans wrote: ("Spoke with Pat this morning.  His perception is that he was angry. Said that he does not need the cane for walking and should not be carrying a weapon in the BFP.") ("Andrew said he saw her and turned the other way. He said he was not angry (and his demeanor were consistent with that), but he was a bit upset about a delay in getting to a men's room").  Again, no corrective action was taken after the April 16th June 04, 2012, events by Supervisor Evans who acknowledged Mr. Wilson's confronted Ms. Allen in violation of the Ten Foot Order.

64. Mr. Wilson's mere presence in the workplace created a hostile, intimidating work environment for not only Ms. Allen but also for *Mr. Gary Cloth,* against who Mr. Wilson admittedly struck at Employee Cloth with his cane with the admitted intent to strike Employee Cloth with the cane.

## EVENT TWENTY-FOUR
### Statement of Gary Cloth (Report)

65. The redacted report states in relevant parts:

("That cane as I mentioned in this letter, this email I wrote, has significance to me. I, I believe that he (WILSON) USED IT, HE CRIMINALLY ATTACKED Pat, ah Pat Allen, I uh thing three months ago earlier with that cane even though he (WILSON) DENIES IT,  I BELIEVE Pat and therefore him using that cane toward me, even though he didn't actually attack me with it, is was kind of threatening") Bate#000086 .

66. There was a witness who actually heard and observed Mr. Wilson, relative to lifting his cane at Employee Cloth, say:

> ("I heard Andy (WILSON) say in a loud voice, I wasn't kidding and then he stormed out of the room with a red face") Bate#000087. Wilson said ("I was not joking Gary (CLOTH)").

67. Bate#000086 Document at Bate 000093 should be read in its entirety and is incorporated herein as if it were specifically expressed.

### EVENT TWENTY-FIVE
### JUNE 25, 2012 INCIDENT,
### MR. WILSON ATTEMPTED ASSAULT ON CLOTH

68. Thirty-one days after the April 16, 2012 incident, Mr. Wilson lifted his cane to strike employee Gary Cloth and admitted he was not joking when he lifted his cane at Cloth.

69. See Mr. Cloth's statement in Complainant's response to Agency's Interrogatories at Bate No. 000083 to 000093

70. Wilson Violent Acts against Gary Cloth: See Attachment -A Ms. Evan's Memorandum of  12/12/12. ("*On June 25, 2012,* Andrew ("Wilson lifted his cane in an angry gesture") as if he were going to strike co-worker Gary Cloth and backed down.BEP-12 Tab#5- Bates#00365 RE; Q&A 20, starts at p#00364 to 365, *Evan's Affidavit.  Fast Forward: Special Note: Mr. Wilson used his cane as a weapon against Ms. Allen on February 23, 2012. Mr. Wilson used his cane as a deadly weapon against Mr. Cloth four months later. Mr. Wilson did not claim an involuntary reaction use of the cane for the June 25, 2012 Cloth's incident as he did for the February 23, 2012 Allen incident.* The acts were referenced as Threats, Violence, Harassment and Intimidation in the

Work-place.  See Complainant's Interrogatory Responses, (CIR) Bates (B#00017). Mr. Wilson's violent behavior toward *Gary W. Cloth* is admitted at Bate#000088. Wilson Violent Acts against Gary Cloth: See Ms. Evan's Memorandum of   12/20/12, (CIR) Bate #000013.

### EVENT TWENTY-SIX
### JULY 18, 2012   WERE ACTS AND WORDS OF RETALIATION
### ("If you tell one more thing on me")[13]
### 90 days after the April 17, 2012 event
### Less than 30 days after the June 25, 2012 event

71.  On July 18, 2012 when Mr. Wilson stated to Complainant, ("if you tell one more thing on me") IF 2012, at 000073. Contained in the common meaning of the word-phrased, ("If you tell one more thing on me") are acts and words of retaliation and reprisal. The Agency tried to divert from the phrase used by Mr. Wilson during its investigation. For the July 18, 2012 event, Ms. Allen, Complainant's single claim is (Reprisal: Retaliation). See Complainant's hand written Voluntary Statement: IF-12 Bates No 00095.

"On July 18, 2012, the White male coworker verbally threatened her (Allen) by angrily stating, ("If you tell one more thing on me. ") See BEF-12-Bates# 0095- BEF-12 Bate# 00015, Line item #3 and BEF-12-Bates 00086. At the third paragraph Complainant states that:

 ("On this occasion, July 18, 2012, Ms. Evans was one of the eye-witnesses to Mr. Wilson's threats. Therefore, all doubt as to Mr. Wilson's assaultive and threatening behavior toward me are put to rest, at least for this episode, July 18, 2012").

72. Mr. Wilson denies making the statement on July 18, 2012 and state he  ("believes she (Allen) must have trouble hearing.") (BEF -12 Bates##00017-last paragraph) BEF 12 Bate# 00389 *(17)* Claim #3). On one hand *Mr. Wilson* denies making the statement and on the other he

---

1.  [13] By the mere nature of the threats, retaliation was the motivating factor. Mr. Wilson intended to frighten Ms. Allen with physical violence and harm to her person, to dissuade her from reporting to the Agency any further harassment against her by him, Mr. Wilson.

admits making the statement by inferring that Ms. Allen has trouble hearing. If he did not used the words, Ms. Allen's hearing ability would not have been Mr. Wilson's concern. ("I did not make the statement") IF-12-B#00389- ("Was complainant's race and/or sex a motivating factor with respect to your actions regarding the incident occurring on July 18, 2012? *If so, please explain. Response: No, he is a white male and the Bureau doesn't care when this happens to a white male as was proven by the abuse I received from Hispanic female team leader several years ago.")* BEP – 12 Bates#00390 at (20).  Special note: The question to Mr. Wilson ignored the claim of retaliation-reprisal. Rather, the question only referenced race.

### EVENT TWENTY-SEVEN
### Investigative Report of July 18, 2012 occurrence

73. On July 18, 2012, did Supervisor Evans hear Ms. Wilson say to Ms. Allen:  (" If you tell one more  thing on me")?  Ms. Allen states the *Supervisor Evans* heard the statement. IF-12 Bates##00095-6. *Supervisor Evans* indicates she did not hear the threat, but acknowledges Mr. Wilson's violation of the 10 Foot separation order. IF -12Bates #00118 (8/08/12 Letter to EEO – Mr. Faulk) (See Separation order at Bat #00127 & 29, dated 3/01/12).

### EVENT TWENTY-EIGHT
### January 17, 2013

### MR. WILSON'S VIOLENT THREATS TOWARD KIPPERMAN KENNETH ON
### JANAURY 17, 2013: Employee Kipperman used the word ("Attack Me")

74. January 17, 2013, Mr. Wilson violently threaten Employee Kenneth Kippeman with physical violence.  On January 18, 2013, Mr. Kipperman wrote" I would like to meet with you in *Ms. Evan* office and ask him why he ***attacked me*** at the vending machine and I want him to apologize"). See Complainant's Interrogatory Response at Bate#000070, penultimate paragraph. Agency's Response: Five days' suspension, reduced to two days with acknowledgment that Mr. Wilson's 1/17/13 acts violated the Agency's Policies as did his historical similar acts of violence

and pattern of assaultive, threatening behavior. See Complainant's Interrogatory Response, Bate

Numbers 000011-12-13, and Agency's Memo., of 2/14/13.


### EVENT TWENTY-NINE
### October 16, 2014
### When Mr. Wilson threatened Ms. Allen with his cane

75. ("On the morning of Thursday, October 16, 2014, approximately at 7:05, I was walking

down the hallway leaving my office in rout to the cafeteria with *Tracey Newell.* Once we

approached the end of the hallway, before making a right at the end of the hallway to proceed in

the direction of the cafeteria, I spotted Mr. Wilson headed our way. We made eye contact and he

had an angry look on his face. All of a sudden, I stopped in my tracts and told Tracy, "let's go

back" ! At this point, I was nervous and started shaking and Tracy asked, "what was wrong"? We

turned around and went back in the direction of my office to give Mr. Wilson enough time to go

pass the hallway. Instead of him passing the hallway, Mr. Wilson stopped at the end of the hallway

and looked at us with a glaring stare while lifting his cane and began to repeatedly hit the floor

going off and making all types of noise. Eventually, Mr. Wilson walked away mumbling on the

2en floor." See Ms. Allen's letter to her Supervisor, *Ms. Jessica Gonzalez,* Manager of Material

Technology, dated October 16, 2014 and Employee *Newell Tracy* letter to Ms. Gonzales, dated

October 20, 2014 relative to the event of October 16, 2014.

76. Ms. Allen, because of fear of retaliation, did not file an EEO Complaint regarding the

October 16, 2014 event.

**EVENT (FACT) THIRTY**
**AGENCY REGULATIONS**
**AGENCY IS BOUND BY**

77.  The Agency maintains regulations that profess a zero tolerance for employees'

behavior such as work place harassment and violence. The Regulations set forth the standards by

which the allegations of harassment and violence and discrimination are to be determine and the

appropriate penalties and corrective action that should be taken to prevent reoccurrence of the

behavior.

**78.          REGULATION Manual Chapter 752**
**AGENCY'S WORKPLACE VIOLENCE DEFINED REGULATION**
**Manual Chapter 752 Adverse and Disciplinary Action (August 22, 1983) No. M-60-1**

OFFICIAL REPRIMAND: 2-3. (b)  ("The official reprimand must be prepared
with the advice and assistance of the Employee and Labor Relations
Division. It shall: (1) State the employee is being officially reprimanded for
(reason or reason); (2) Describe the circumstances of the offense, including
time and place; (3) Caution the employee that repetition of any
misconduct, or failure to correct or improve the deficient conduct, will
result in more severe disciplinary action, up to and including removal")

79. The Agency Never told Mr. Wilson that his conduct will result in more severe disciplinary

action, up to and including removal, as mandatorily required by the used of the word

("SHALL"). See CIR at Bate#00147 &48.

80.          **REGULATION MANUAL NO#M-60-1**

REMOVAL FROM EMPLOYMENT AS CORRECTIVE ACTION: Manual N0. M-60-1
(August 22, 1983) paragraph (2) (" A removal action for disciplinary reason in situations
of: (a) Conduct for which removal is required by statute; (b) Conduct which is serious
enough to warrant removal for a single event( See Table d and Table of Offenses and
Penalties) or ( c ) Conduct which  occurs after progressive disciplinary failed to prevent
repeated offenses. See CIA. Bate#000156.

81.  For Mr. Wilson's repeated serious violent acts as revealed by recorded facts, removal was mandatory.

82. Agency's Workplace Violence Regulations (Internal Communications (May 30, 2013) Bate# 00134. The Regulation postdate the relevant events herein but it incorporates previous Regulation that were effective at the time of the occurrence herein.

## THE REGULATIONS DEFINES CERTAIN ACTION THAT CONSTITUTES THREATS OF VIOLENCE

83.  (" Unwanted touching; Making hostile or menacing comments such as "I"ll make you pay" or "We can take this outside" that could be interpreted as threats when combined with other factors like the speaker's tone and body language or how close the speaker is; and striking or threatening someone with your hands, feet, or a foreign object."

84. Disqualification of supervisor when she/he is the named discriminatory party

**Reporting workplace violence**:    "If the supervisor is the alleged perpetrator, the incident ***must*** reported to the next higher level of supervision. The affected person must also report the alleged incident to the Office of Security via the DCF Central Police Operations Center (CPOC) at (202) 874-7400…"  See DEP's Internal Communications May 30, 2013, CIA Bate#00134.

## 85. Manual No. M-60-1 (February 22, 1985 Paragraph (3) Mandatory regulation by the use of the word ("Shall")

"An employee shall be free from restraint, interference, coercion, discrimination and reprisal in preparing and presenting the reply" to acts of intimidation.  See Bate# 000151.

Any act of reasonable care by the Agency that could have prevented any one of Mr. Wilson's foreseeable violence and threats to Complainant which were not taken, is a violation of the Regulation.

## 86. RESPONSIBILITY OF SUPERVISOR BEP Circular No# 60-007(9/25/2008) (2). Bate #000137.

## 87. AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (6) (b) (1) RESPONSIBILITIES. Supervisor.

### To ensure safe work environment

Paragraph 6 b (1) ("Ensure their work area is free of threats, violence, harassment, and intimidation.").

88. The Agency did not ensure a safe work environment for Complainant. Rather, it acted in bad faith in promoting the unsafe work environment of which it had actual notice. If the Agency had told Mr. Wilson repeated action of violence could result in termination of employment, Mr. Wilson behavior would have changed or he would certainly have been fired based on the historical record. An Agency's bad faith self-serving decision that manifest a flagrant abuse of discretion must be discredited as a defense for the proposition that it served corrective action for hostile work environment.  The separation order was bogus. The disciplinary action retained Complainant in the danger zone. For Mrs. Evans to decide retaliation against Mr. Wilson would have amount to a parallel finding against herself.

89. The totality of the circumstances must be considered relative to Mr. Wilson's violent acts against Plaintiff in particular and to the BEF affected employees in general.  It is not necessary that all of Mr. Wilson's violence be directed to Complainant for there to be a continuing unbroken chain of hostile work environment for Complainant from April 30, 2008 until and including 2014. Mr. Wilson's violent acts against Plaintiff and other employees fall within the Definition of the Agency's Work Place Violent Regulations of zero tolerance.

90.  **Circular No.60-00.7 (9/25/08) paragraph#2 required Ms. Evans and Gupta to recluse themselves, as named discriminatory parties from the decision process**

91. The Agency violated its own Regulation by appointing named discriminatory parties

92. Ms. Evans and Mr. Gupta, Ms. Allen's first line Supervisors, who were named in all of Ms. Allen's EEO Complaints as discriminatory parties. Supervisor Evans participated in all

disciplinary issues relative to Mr. Wilson. Ms. Evans either participated in the disciplinary decisions against Mr. Wilson for all of his unlawful acts until and including Mr. Wilson's violent acts against Employee Cloth on October 16, 2013, when Mr. Wilson admitted that he intended to strike Cloths with his cane and the January 17, 2013 incident involving Employee <u>Kipperman who used the word ("Attack Me</u>. Their decisions were made in bad faith and not in compliance with the Agency's regulations. Ms. Evans and Mr. Gupta's decisions herein relative to Mr. Wilson were self-serving and constituted a conflict of interest.

93. The Agency violated its own regulations by tolerating Mr. Wilson's workplace violence, threats of violence and actual intimidation of other employees from April 30, 2008 until and including January 18, 2013

94. **AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (5) (b) (1) Provides** (" The employee involved may be given a letter instructing them to refrain from any contact with each other.")

95. The separation order was intentionally untimely. The ineffective March 01, 2012, separation order was negligently issued four years next to April 30, 2008, and several months after it was suggested to Ms. Evans by Mira.  The Agency violated the above Agency Regulations.

96. **AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008(5) (b) (2)** ("Some or all individual involved in the alleged incident may be placed on administrative leave, moved to another section or shift…..").

97. The Agency's decision to not place Mr. Wilson and Complainant in separate buildings or change their work shift or alternatively, provide Complainant a work area behind locked or lockable doors to secure her from Mr. Wilson's violence, violated    AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008(5) (b) (2), and AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (6) (b) (1) RESPONSIBILITIES. Supervisor: ("Ensure their work area is free of threats, violence,

harassment, and intimidation.") Agency violated all of the above regulations. The undisputed facts

evidence a continuing hostile work environment.

98. **MANUAL No. M.60-1 Chapter 752- Appendix A Table of Offenses and Penalties:**

Paragraph three states ("When an employee has committed a combination or series of different

offenses, a greater penalty than listed for a single offense should be considered") See Bates No.

000168.

99. The Agency violated this regulation by not investigating many of Mr. Wilson's

verifiable workplace violent acts and trivializing others with discredits to the Victim.

100. **Manual No. M-60-1 (October 3, 2008) Nature of Offensives Suggested Penalty**

No. M-60-1-Oct. 3, 2008) set forth sequences of penalties: See CIA Bate#000169

1st Offense 2nd Offense and  3rd Offense: 8a. Frightening, threatening others: 1st.

Counseling to removal: 2nd.   5-day suspension to removal; 3rd.      Removal

8b. Creating a Disturbance or using improper, unacceptable Language or gestures.

1st      Counseling to removal; 2nd.      5- Day suspension to removal; 3rd.           Removal.

Failure to adhere to the Requirements of a BEF Policy: 1St Counseling to 14-day suspension
2nd. 14-day suspension to removal; 3rd.  Removal.

Misconduct on or off duty of a type which Compromises or threatens Bureau security, is
prejudicial to the repetition of the Bureau………………………….1st. Official Reprimand to
removal ,2nd 14 –day suspension to removal,3rd. Removal.

*Relief Sought:* Plaintiff moves the court for an order declaring the following:

99-A. The Defendant Agency is bound by its own regulations.  The Agency violated its

own regulations by ("Not") providing Plaintiff with a safe work environment, free of hostility,

harassment, race discrimination, intimidation, retaliation and disparate treatment. The Violation

constitutes a continuing course of discrimination from   2008 until present because at all times,

named discriminatory parties   in Plaintiff's EEO complaints were the same High Agency Officials

who decided the course of actions relative to each of Plaintiff's EEO Complaints, in direct violation

of the Agency's Regulations, and prejudice the entire EEO investigative and fact finding process,

to the extreme detriment of Plaintiff, Patricia Allen. The Agency failed to monitor, supervise or

correct the violations of its regulation which were violated by it administrative official, who acted

to the detriment of the entire EEO Administrative Process.

## COUNT TWO

### AGAINST ANDREW WILSON UNDER THE DOCTRINE OF RESPONDEATE SUPERIOR WITH LIABILITY IMPUTED TO THE DEFENDANT AGENCY

### EACH OF DEFENDANT'S DISCRETE ACTS CONSTITUTES A SEPARATE ACT OF DISCRIMINATION AGAINST PLAINTIFF[14]

### EVENT ONE:
### APRIL 30, 2008 Mr. Wilson's extreme acts of violence against Plaintiff, Patricia Allen.

101. On April 30, 2008, Mr. Andrew Wilson admitted that he kicked a metal trash can

towards Plaintiff Patricia Allen's head in the workplace. Plaintiff filed a Complaint of Employment

Discrimination against Mr. Wilson with the Agency. The Complaint was decided against Plaintiff

Allen, but the acts of Discrimination against Plaintiff by Andrew Wilson continued in the same

form it started, attempted physical assaults and physical assault upon Plaintiff's person.

---

[14] Discrete actions are clearly defined events that have a definite beginning and, in most cases, a definite conclusion. See *Ornelas v. Department of Justice*, EEOC Appeal no. 01995301 (September 26, 2002). untimely discrete acts, even those parts of a harassment/hostile work environment claim, are not independently actionable but should be used as background evidence to support the claim. some discrete acts that might otherwise be considered untimely will be accepted for investigation if the time period for filing is extended pursuant to the exceptions listed in 29 C.F. R. section 1614.105(a)(2) or if they are part of a bona fide continuing violation claim.

*Acts of Racial Discrimination* **(**"Event Three"**)**

102. On June 04, 2008, Mr. Andrew Wilson demonstrated racial animus against Plaintiff, Patricia Allen and her Black Female Co-Worker   ("Ms. Rachelle Wright")    in general and his racial bias against the African American Race specifically, when he said (" No fucking way that a Black Man will become president") in reference to the then presidential candidate,  Honorable Obama. June 04, 2008, incident was proximately 34 days next to April 30, 2008.

103. Each of Mr. Wilson's violent acts against Plaintiff Allen were substantially motivated by Ms. Allen' race and complexion and the fact that she is a female who have brought complaints of discrimination and harassment against Mr. Wilson for his violent acts in the workplace against Plaintiff Allen.

### EVENT SEVEN JULY 27, 2011
### Mr. Wilson coughed in Ms. Allen's face

104. *Hostile Work Environment, Assault and Battery upon Plaintiff Allen's person by Mr. Wilson.*

105. Mr. Wilson maliciously, willfully, intentionally and deliberately coughed saliva from his mouth into Plaintiff Allen's face.  The saliva was an uninvited, offensive touching of Plaintiff Allen's person without her implied or expressed consent.  The saliva that made physical contact with Plaintiff's person constituted a physical assault and battery and caused Plaintiff severe mental and emotional distress and fear for her life being taken by Mr. Andrew Wilson.  Mr. Wilson's acts created a hostile work environment for Plaintiff.

*106. Discrimination based on race***:**

107. Mr. Wilson's coughing in Plaintiff Allen's face on July 28, 2011, was substantially motivated by race, color, dark complexion, because Mr. Wilson, on June 04, 2008, had expressed his hate for the Black African American Race, of which Plaintiff is a member.

### 108. Retaliation:

109. Mr. Wilson's acts of July 28, 2011 were substantial motivated by Plaintiff Allen's claims of employment discrimination against *Mr. Wilson* to the Agency and specifically to her immediate supervisor, Julie Evans, from 2008 until and including July 20, 2011. In the interim, Plaintiff had constantly emailed *Julie Evans* with a request for protection against *Mr. Wilson's* violence, to no avail. *Mr. Wilson*, through *Ms. Evans*, was made aware of each of *Plaintiff's Allen's* complaints to *Ms. Evans* about *Mr. Wilson*.

## EVENT NINE AUGUST 29, 2011 [15]

### 110. Acts of intimidation:

111. Mr. Wilson's acts of walking   up and down the hallway outside of Plaintiff Allen's workplace was deliberate, malicious with the specific intent to intimidate Plaintiff Allen and to

---

[15] On August 29, 2011 Mr. Wilson, intimidated Complainant with his presence walking up and down the hallway outside her office.
("Mr. Wilson walked up and down the hallway past my doorway with an angry face, like he was waiting on me to come out. And the only time I would come out is when I could pair up with a co-worker to walk down the hallway.") Ms. Allen's Deposition Transcript: Tr. P. 52 L.18 -22.

26. Mr. Wilson was in physical striking contact with Ms. Allen who was stationed in an open cubicle with no door. Tr. P. 54, L1 – 8. Out of fear of retaliation through violence against her by Mr. Wilson, Ms. Allen did not report the incident and other similar incidents because she was afraid of Mr. Wilson. She felt helpless in that the Agency would not and had not protected her.  She simply avoided Mr. Wilson as she had for years. Tr.54, L5-8., because she thought nothing would be done based on the lack of corrective action attending the 2008 incident. Tr.54, L 21-22, P55. L- 1. ('I just avoided him") P55, L.8. There was no reason Mr. Wilson need to be in Ms. Allen's work area. Tr.56. L 1 -8.

dissuade her from reporting to the Agency Mr. Wilson's violent and hostile acts against Plaintiff and threats to cause Plaintiff physical harm. Mr. Wilson acts of    August 29, 2011, did in fact intimidate Plaintiff Allen and caused her to fear for her life and safety in the workplace if she continued to report Mr. Wilson to the Agency. Therefore, Plaintiff, out of fear, did not report to the Agency Mr. Wilson's acts of August 29, 2011. Plaintiff understood that nothing had been done since April 2008, to prevent Mr. Wilson from gaining physical contact with Plaintiff's person and that Mr. Wilson was at liberty to assault her at will.  Mr. Wilson had demonstrated his ability to attack Plaintiff on April 30,2008, and June 04, 2008, as he had on this day, August 29, 2011.


*112. Hostile work environment***:**

113. Mr. Wilson's deliberate acts of August 29, 2011, created for Plaintiff a hostile work environment.

*114. Racial discrimination:*

115. Mr. Wilson's acts of August 29, 2011, were substantially motivated by Plaintiff's race.

*115. Retaliation:*

116. Mr. Wilson's acts of August 29, 2001, were substantially motivated by retaliation against Plaintiff for reporting his violent behavior to the Agency and his supervisor, Julie Evans.

*117 Intimidation and Harassment:*

118. Mr. Wilson's acts of August 29, 2011, were specifically to intimidate and harass Plaintiff *and* to dissuade Plaintiff, and others similarly situated, to not report Mr. Wilson's violence to the Agency.

**EVENT THIRTEEN**
**SEPTEMBER 26, 2011 INCIDENT** [16] **See paragraph 31**
**EVENT FIFTEEN OF OCTOBER 27, 2011, INFA, PARAGRAPH 35.**

119. On September 26, 2011, Mr. Wilson, with the specific and deliberate intent to further intimidate and harass Plaintiff and to dissuade her from reporting his behavior to the Agency and to Mrs. Julie Evans, paraded in and out of Plaintiff's workplace to demonstrate his ability to gain striking distance to Plaintiff at will.

120. The second incident of 9/26/11, explained in Plaintiff's email to *Julie Evans*, that Mr. Wilson and Plaintiff Allen shares the same workplace to Plaintiff's fear and detriment.

121. The October 27, 2011 incident is further evidence that Mr. Wilson maintained physical striking distance to Plaintiff Allen and he used the proximity to harass and intimidate Plaintiff consistently.

*122. **Hostile work environment**:*

123. Mr. Wilson's deliberate acts of September 26, 2011, and October 27, 2011, created for Plaintiff a hostile work environment.

*124. **Racial discrimination:***

125. Mr. Wilson's acts of September 26, 2011, and October 27, 2011were substantially motivated by Plaintiff's race.

*126. **Retaliation:***

---

[16] There were two incidents that occurred on September 26, 2011
  30. On September 26, 2011 Mr. Wilson intimidated Ms. Allen by coming into her work area and angrily staring at Ms. Allen.

127. All of Mr. Wilson's acts, including those of September 26, 2011, and October 27, 2011, were substantially motivated by retaliation against Plaintiff for reporting his violent behavior to the Agency and his supervisor, *Julie Evans.*

128. **Intimidation:**

129. All of Mr. Wilson's acts, including those of September 26. 2011, and October 27, 2011, were specifically to *Intimidate Plaintiff with his ability to physically assault Plaintiff, to place Plaintiff in fear of her physical safety and* to *dissuade* Plaintiff and others similarly situated to not report Mr. Wilson's violence to the Agency.

## EVENT SIXTEEN DECEMBER 23, 2012

130. **Hostile Work Environment based on race and retaliation:**

131. Mr. Andrew Wilson used his cane, a dangerous weapon, to twice strike at Plaintiff's head.

132.  The use of the cane constitutes a dangerous and deadly weapon, because a successful strike to Plaintiff's head could have killed Plaintiff or caused Plaintiff to suffer permanent brain damage.

133. Mr. Wilson's intent to strike Plaintiff with his cane is substantiated by the sworn statement of Gary Cloth, who, based on his personal knowledge about Mr. Wilson's   violent character, honestly believes that Mr., Wilson intended to physically assault Plaintiff on December 23, 2012. See Infra at 65, (Statement of Gary Cloth). See Exhibit #6.

134. Mr. Wilson lifted his cane to strike Gary Cloth, and professed his intent to strike Gary Cloth by stating, unequivocally:

**134-A ("I heard Andy (WILSON) say in a loud voice, I wasn't kidding and then he stormed out of the room with a red face") Bate#000087. Wilson said ("I was not joking Gary (CLOTH)"). Infra at 66.**

135. Mr. Wilson intended to strike Plaintiff in the head with his cane as he intended to strike Gary Cloth. Mr. Wilson's lack of success in making head strikes with his cane is due to his slow movement compared to those who observes his striking intent and quickly move out of harm's way.

136. Mr. Wilson's acts of twice striking at Plaintiff's Allen head constitutes an attempt assault and battery and a threat to inflict egregious harm upon Plaintiff Allen's person.

137. On February 23, 2012, Mr. Wilson acted intentionally, deliberately and wantonly with the specific intent to cause Plaintiff' Allen physical and mental harm and to instill in her morbid fear for her life and safety in the Workplace.

138. Mr. Wilson's violent acts against Plaintiff Allen was offensive, uninvited, and without Plaintiff's implied or expressed consent.

139. The uninvited attempted assault and battery by Mr. Wilson on Plaintiff's person, caused Plaintiff to suffer severe mental and emotional distress and fear for her life.

140. As stated supra, predating the February 23, 3012 event, is Mr. Wilson's documented history of workplace violence against Plaintiff Allen as far back as April 30, 2008, when he admitted kicking a metal trash can towards Plaintiff Allen's head.  The event was eye-witnessed by *Sireda Foster*. *See Event One*. In his admission, Mr. Wilson said he lost his temper.

Mr. Wilson's violence against Plaintiff on February  23, 2012 created for Plaintiff a hostile work environment.

*141. **Retaliation for engaging in EEO activities:***

142. Mr. Wilson's violence against Plaintiff on February 23, 2012 was substantially motivated by Plaintiff having brought EEO Claims against Mr. Wilson, and in retaliation against Plaintiff for reporting Mr. Wilson's workplace   violence to the Agency and Mr. Wilson's supervisor, *Julie Evans.*

*143. **Racial discrimination:***

144. Mr. Wilson's violent acts against Plaintiff on February  23, 2012 were substantially motivated by Mr. Wilson hate for Plaintiff because of her race, Black Female African American, and her color, dark complexion, since Mr. Wilson, in 2004, clearly pronounced his hate for Black African American when Mr. Wilson made derogatory reference to then Presidential Candidate, *Obama.*

145. Mr. Wilson's violent acts against Plaintiff on February 23, 2012 were intended to intimidate Plaintiff and to dissuade her from filing claims against him and to inflict grievous bodily harm upon Plaintiff person as a symbol of his dominance and freedom in the Agency Workplace to act as he wished with impunity, knowing that his immediate supervisor, Julie Evans, condoned his violent behavior and would take no corrective or punitive action against him, Mr. Wilson.

147. Always, Mr. Wilson knew that Mr. Wilson's racially, retaliatory and acts of harassment against Plaintiff Allen, were supported by his Immediate Supervisor, Julie Evans, who used Mr. Wilson as her agent of hate, harassment, intimidation and retaliation against Plaintiff for Plaintiff's claims of employment discrimination against Julie Evans, Mr. Wilson, the Agency and many agency management officials.

148. But for **Julie Evans'** condonation and encouragement of Mr. Wilson's unlawful

behavior, Mr. Wilson would not have been able to retaliate against Plaintiff, harass Plaintiff  and

would not have been able to strike at Plaintiff with his cane, as he did Gary Cloth, and the attack

on  Employee Kenneth Kippeman , on or about January 17, 2013. (" .  One January 18, 2013, Mr.

Kipperman wrote, (" I would like to meet with you in   **Ms. Evan** office and ask him why he

**attacked me** at the vending machine and I want him to apologize").    Infra at 74.


149. **EVENT TWENTY-THREE APRIL 16, 2012**


150. On April 16, 2012 Mr. Wilson threaten Complainant with his cane. See paragraph #63

infra. Mr. Wilson's acts of slamming his cane to the floor and swinging it in the air were with the

intent to frighten Plaintiff Allen and create a hostile work environment for Plaintiff.  Mr. Wilson's

violent acts of April 16, 2013 were substantially motivated  by Plaintiff race, in retaliation against

Plaintiff for engaging in EEO activities against Mr. Wilson and Julie Evans.

151. Mr. Wilson's acts    created a hostile work environment for Plaintiff Allen, and the

acts intimidated Plaintiff Allen and caused Plaintiff Allen   severe mental and emotional distress.

152. **EVENT TWENTY-SEVEN**


153. On July 18, 2012, Ms. Wilson said to Ms. Allen, in hearing distance an within the

sight of Supervisor Evans:    (" If you tell one more  thing on me")?

154.  Ms. Allen states the *Supervisor Evans* heard all that Mr. Wilson said and saw all

that Mr. Wilson did on 7/18/2012.

155. Supervisor   Evans' false denial of having heard Mr. Wilson say to Plaintiff Allen,

("*If you tell one more thing on me"*) is customary of Supervisor Evans' pattern and practice to

condoned and encouraged Mr. Wilson's unlawful behavior, and to continue to make excuses for

Mr. Wilson's behavior and to cover-up for Mr. Wilson to prevent either corrective or punitive

action being taken by the Agency against   Mr. Wilson for his workplace violence and abusive

behavior.

156. The event of February 23, 2012 is just one of many of which Supervisor Evans

proffered an excuse for Mr. Wilson's violence in lifting his cane.

157. To cover up Mr. Wilson's attempted assault on Plaintiff's person by Mr. Wilson with

his cane on February 23, 2012, Supervisor Evans proffered that: ("to catch the elevator to rush to

a meeting, Mr. Wilson lifted his cane") to say that Mr. Wilson did not lift his cane to strike Plaintiff

Allen in the head, and to indicate  ("that Mr. Wilson did nothing"), which was contradicted by Mr.

Wilson's stating that (he lifted his cane in self-defense and further contradicted by Mr. Wilson

saying that he lifted his cane involuntarily due to a nervous condition.

158. Mr. Wilson's statement has but one interpretation: That interpretation is that Mr.

Wilson threaten Plaintiff Allen with bodily harm which he intended to conditionally inflict upon

Plaintiff's person, ("if she tell one more thing") if she continue to assert EEO Claims against Mr.

Wilson for his violence towards her, Plaintiff Allen.

159. The phrase, ("If you tell one more thing ") is about Plaintiff Allen having engaged in

EEO Protected activity against Mr. Wilson and involving Mr. Wilson.

160. Mr. Wilson's threats of July 18, 2012, were substantially motivated by Plaintiff race,

Retaliation against Plaintiff for engaging in EEO Protected activities from April 30, 2004,

heretofore. Mr. Wilson threaten acts created for Plaintiff a hostile adverse work environment.

161. Supervisor Evans' false statement that she did not hear Mr. Wilson's threats to

Plaintiff Allen frighten Plaintiff Allen, intimidated Plaintiff because Supervisor Evans false

statement evidenced that she condoned Mr. Wilson's discriminatory acts, encouraged the discriminatory acts and had absolutely no intention of taking any corrective action against Mr. Wilson for his acts or to prevent further and future acts of harassment, retaliation, intimidation motivated by race and Plaintiff's EEO Complaints against both Supervisor Evans and Mr. Wilson.

162. **_EVENT TWENTY-NINE   October 16, 2014_**

163. On October 16, 2014, Mr. Wilson, again, intimidated Plaintiff Allen with his cane, as witnessed by Co-Employee, *Tracy Newell*. Mr. Wilson again, used his cane as a weapon to intimidate Plaintiff Allen and to dissuade Plaintiff Allen from protesting his violence against her through the EEO process. Because of the many previous threats by Mr. Wilson, with no corrective action   taken by the Agency, and Mr. Wilson's proximity to Plaintiff Allen in the workplace, Plaintiff Allen was so intimidated that she did not report the event to her Supervisor.

164. Because Supervisor Evans was the Immediate Supervisor, of both Plaintiff and Mr. Wilson, to whom Plaintiff was to report Mr. Wilson's discriminatory acts, was also a named discriminatory party in Plaintiff's complaint with the EEOC of unlawful employment discrimination, Plaintiff was afraid to report Mr. Wilson's behavior to Supervisor Evans, who had encouraged Mr. Wilson's workplace violence without taken either corrective or punitive action against Mr. Wilson.

165. Mr. Wilson's threats of October 16, 2014, were substantially motivated by Plaintiff race, Retaliation against Plaintiff for engaging in EEO Protected activities from April 30, 2004, heretofore.

166. Mr. Wilson threatening acts created for Plaintiff a hostile adverse work environment and was extremely intimidating and dissuaded Plaintiff from reporting his violent behavior to the Agency.

167. But for Supervisor Evans' acts of encouraging Mr. Wilson's discriminatory acts and not taking corrective action against Mr. Wilson, Mr. Wilson would not have and could not have discriminated against Plaintiff as stated herein.

168. ***Continuing Course violation theory*:**

169. Plaintiff Patricia Allen suffered a continuation of discrimination based on her race, retaliation for participating in EEO protected activities, harassment and hostile abusive work environment that started on April 30, 2004, until and including heretofore.[17]

170. The time between April 30, 2008 events and   all times, including June 04, 2008, July 27, 2011, Plaintiff Allen suffered a hostile work environment that was caused by Mr. Andrew Wilson following her throughout the Agency and Plaintiff Allen running through the Agency's workplace hallways to avoid physical contact with Mr. Wilson, in constantly fear that Mr. Wilson would physically attack her.

171. Recorded future events, as stated herein, of Mr. Wilson's violence towards Plaintiff Allen, substantiated her fears of Mr. Wilson and her reasonable intimidation and dissuasion from reporting Mr. Wilson's harassment between April 30, 2008 and July 27, 2011, at which time she believed no matter what she did, Mr. Wilson was going to eventually, physically assault her, Plaintiff Allen.

---

172. Because of the Agency, and Supervisor Evan,  had ignored the severity of Mr. Wilson's acts of violently throwing a metal trash can at Plaintiff Allen's head on April 30, 2008, and Mr. Wilson's display of racial animus against the Black African American Race, Plaintiff Allen was intimidated by the Agency's failure to take corrective action, and she was also intimidated by Mr. Wilson's ability to demonstrate violence against her with impunity, and therefore, did not report to the Agency Mr. Wilson's continuation of harassment, until July 27, 2011.

173. *Evidence of Harassment between April 30, 2008 until July 27, 2011.*

174.  *Foster Sireda,* a victim of Mr. Wilson's violence and racism in 2008, is expected to testify, as she did in the Agency's investigation process, that, ("I have seen Mr. Wilson follow behind the Complainant during her lunch hours to the breakroom.") See BEF-11-IF Tab 17, and infra at paragraph 32.   See footnote 1., where on June 18, 2008 and June 19, 2008, after the April 30, 2008 attempted assault and battery by Mr. Wilson, on Plaintiff's Allen Person, Mr. Wilson, through Julie *Evans* and *Gouta*, was allowed access to Plaintiff, without a separation order.

*Material Adverse employment action***:**

175. Mr. Wilson's acts, as stated herein, were deliberate, malicious and substantially racially motivated, based on retaliation, and so severe that it became a condition of Plaintiff's employment and caused her severe mental and emotional distress every day she spent in the workplace and at home and out of the workplace through continuous nervousness and panic attacks, and fear of her life and safety on the job because, Plaintiff *Allen never knew what Mr. Andrew Wilson would do next*.

176. Supervisor Julie Evan's acts and omissions to act, as stated herein, were substantially motivated by Plaintiff Allen's race, retaliation against Plaintiff through Mr. Wilson, because of Plaintiff 's complaint of employment discrimination against Supervisor Evans and Mr. Wilson.

177. Supervisor Evans' refusal to monitor Mr. Wilson's behavior, supervise Mr. Wilson and to take preventive correction and punitive action against Mr. Wilson for his Discriminatory acts, were the substantial cause of Mr. Wilson's discriminatory behavior as stated herein.

## COUNT THREE
## DISCRIMINATORY ACTS AND OMISSIONS BY PLAINTIFF'S IMMEDIATE SUPERVISOR
## JULIE EVANS

178. ***Plaintiff restates and alleges all facts herein, infra and supra, and further states*:**

179. As the immediate supervisor of Mr. Andrew Wilson and Plaintiff, Patricia Allen, Julie Evans owed both Plaintiff and Mr. Andrew Wilson a reasonable duty of care, that included, but was not limited to, maintaining a non- discriminatory, harassing work environment.

180. The duty of care is expressed in the Agency's regulations:

**181.** For each of Mr. Wilson's discriminatory acts, Julie Evans, (Ms. Evans) was required to give Mr. Wilson a letter instructing Mr. Wilson to refrain from contact with Plaintiff Allen. See **AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (5) (b) (1).**

182. Ms. Evans violated the Agency Circular. The ineffective separation order of March 01,2012, was issued four years after the April 30, 2008 event. Mr. Wilson's recorded admission that he kicked the metal trash can in Ms. Allen's direction, confirmed the severity of Mr. Wilson's acts of violence and broadcasted the potential injuries to Ms. Allen, had the trash can contacted Ms. Allen's head.  Infra, at 94-95.

183. Plaintiff restates and real ledges, paragraphs herein, 94, 95, 96 ,97, 98,99, 100, in their entirety, as if the same were expressly stated herein in count two and count one.

184. Mr. Andrew Wilson's harassment of Plaintiff from April 2008, heretofore, was known by Supervisor, Julie Evans:  By Email, to Julie Evans and Gouta, from Plaintiff Allen, Plaintiff Allen states her fear of Mr. Wilson and question:  (" *I want to know why Andy have come into our office 201-26 every day during lunch time to wait on Rose, he was here yesterday, June 18th and today, June 19th 2008. I am very much afraid. Andre here are two more names that had words with Andy…"*).

186. No separation order was issued for the April 30, 2008 attempted assault and battery by Mr. Wilson upon Plaintiff Allen.

187. ***Notice to Julie Evans of Mr. Wilson's violence:***

188. Ms. Allen reported the April 30, 2008 event to Ms. Evans and the Agency EEO Division and the Agency Security-Police- Division which falls under 5 U.S. Code § 5378. Julie Evans' response to Plaintiff Allen's report of Mr. Wilson's violence was one of disrespect toward Plaintiff.

187. Julie Evans begin a long course of speaking to Plaintiff in a demeaning manner in a disrespectful tone of voice with a display of short temper, as if she was not interested in anything Plaintiff Allen had to say about Mr. Wilson, who was Julie Evans' close friend for many years.

190. Julie Evan's indifference caused Plaintiff to fear both Mr. Wilson and Supervisor, Julie Evans.

191. Plaintiff feared Mr. Wilson for because of his past outburst of physical violence against her, the opportunity he was given by Supervisor Julie Evans to do whatever he wanted to do to her in the workplace.

192. Plaintiff feared Supervisor Julie Even because Julie Evans allowed Mr. Wilson to physically assault Plaintiff and the evidentiary fact that Julie Evans condoned Mr. Wilson's violent behavior and encouraged Mr. Wilson's violence, and because Julie Evans was a name discriminatory party in Plaintiff's EEO Complaints against the Agency and Mr. Wilson. Gary Cloth attest to the fact, as an eye-witness, that Julie Evans condoned and encouraged Mr. Wilson workplace violence. ***See footnote 18.***

193. Plaintiff Allen also feared Julie Evans because Ms. Evans constantly lied on Plaintiff, and made false statements which were recorded as false and contradicted by evidentiary recorded facts.

194. *Julie Evans' False statement*:   Julie Evans falsely stated that she removed Mr. Wilson from striking distance of Ms. Allen after the April 30, 2008 event. Which is contradicted by Ms. Allen's evidentiary email to the contrary. See footnote 1 and 2.  Also see Other workplace violent acts by Mr. Wilson in 2008, which is revealed in the BEP Tab#2-B 08-75-F (IF-BEP) Bate# 147 Line (6) and 148 Line (10). Also see paragraph 14 herein.

195***. Julie Evans falsely stated that she called for a meeting with Plaintiff Allen*:**

196. Ms. Allen, not Julie Evans, requested a meeting to discuss why Mr. Wilson maintained striking distance to Ms. Allen in the workplace in view of the April 30, 2008 attempted assault and battery on Plaintiff's person by Mr. Wilson. See paragraph 15 herein:

197. ("Ms. Allen wrote ("Mr. Wilson is still in close proximity to me, I am requesting a meeting immediately to address my concerns and my safety.") See IF 08, 84. Eight days after April 30, 2008, Ms. Allen expressed her fears to *Ms. Gupta* in an email of May 08, 2008. ("As of this morning Andrew Wilson is still occupying his desk in 201-28A where my desk is located. It is my understanding that he was supposed to move to a different desk immediately. I am extremely disturbed, frightened and upset that he is allowed to do as he will and is disobeying management direction."). See IF, 08 at p.83. The harassment continued until and including June 4, 2008. See bate#188.

### 198. *Julie Evans knew of Mr. Andrew Wilson's racism and racial animus against Black African American in the workplace*

199. Through Plaintiff Allen and Ms. Rachelle Wright, (African American female and BEP Police *Officer, Stg. Henderson, and the Agency's EEO Office,* Julie Evans was made aware of Mr. Wilson's racism against Black Agency employees, including Plaintiff Allen:

200. ("The combined June 4th, 2008 and April 30, 2008 Events heightened Ms. Allen's fear of being violently attacked by Mr. Wilson. In writing and verbally, Ms. Allen expressed her fears to Ms. Evans. ") See infra. at paragraph 16 and footnote #3.

201. BEP Police ***Officer, Stg. Henderson***, on or about June 04, 2008, warned Julie Evans that: ("…it appears that Mr. Wilson's action- Workplace violence is escalating") IF-08-p 51. See Event Four, paragraph 17, herein.

202. Evidentiary facts are that Officer, Stg. Henderson's prediction, that Mr. Wilson's violence was escalating, was absolutely correct, a warning not taken seriously by *Julie Evans*, or perhaps, the warning was taken seriously by Julie Evans, with the specific intent that Mr. Wilson would , in the future, physically assault Plaintiff Allen, as he eventually did, in addition to

assaulting  Agency employee Gary Cloth and Agency employee Kenneth Kippeman,  in the workplace.

203. *Retaliation by Julie Evans about two month after the April 30, 2008 attempted assault on Plaintiff's person by Mr. Wilson*

204. In retaliation against Plaintiff Allen for bringing the EEO Claims against *Ms. Evan's* friend, *Andrew Wilson*, *Ms. Evans* assigned Plaintiff Allen to a cleanup detail which was not part of her job description, as she did all other Agency Employees who had filed claims against *Mr. Wilson*. See Event Six, **("**<u>JUNE 23, 2008 CLEANING DETAIL")</u>.

205. <u>*No Corrective action by Ms. Evans:*</u>

206. One day suspension from work was Mr. Wilson's reprimand for kicking the metal trash can towards Ms. Allen's head, coupled with Julie Evans' false assertions that she separated Mr. Wilson and Ms. Allen in the workplace. See Paragraph 20:

207. By Agency Regulation Standards, Mr. Wilson's workplace violence with the medal trash can, on April 30, 2008, which could have cause Plaintiff serious bodily injury or even death had the medal trash can contacted her head, required a corrective action far beyond a one day suspension, as preventive measures for future similar occurrence by Mr. Wilson.   See **REGULATION MANUAL NO#M-60-1, and No.M-60-1,** with emphasis on the mandatory word ("shall") .

208. (" (1) Ms. Evans falsely claimed that Plaintiff declined to attend a meeting. (IF Tab 5- 6). It was Plaintiff who requested a meeting with Supervisor Evans and it was Supervisor Evans who declined to meet with Plaintiff; (2) falsely claimed that Mr. Wilson desk area was change as corrective action. (IF Tab 6). Mr. Wilson was simply removed around the corner from Plaintiff and remained in physical

striking distance of Plaintiff. (3) Falsely stating Supervisor Evans Counseled Mr. Wilson and Complainant, Ms. Allen. (IF Tab 6). Supervisor Evans did not counsel Mr. Wilson and Complainant, Ms. Allen") See also paragraph 21, infra.

209. *Julie Evans took no Corrective Action for the July 27, 2011 Assault and Battery by Mr. Wilson upon Plaintiff's Person*

210. For intentionally coughing in Plaintiff's face, which was an assault and battery, Mr. Wilson was required by Ms. Evans to apologize to Plaintiff Allen, for his assault and battery on Ms. Allen's person, and nothing more. The apology was faked, insincerely and totally without corrective substance. In fact, the apology was a signature to Mr. Wilson that his escalating workplace violence was condoned and he could continue the violence with impunity. See paragraph 22 and footnote #4, and paragraph 23, citing Plaintiff's transcript testimony:

211. See Ms. Allen's Transcript (TR) at p.28, L. 7-22, p.29, L 1-6. ("There should have been some separation between me and Mr. Andrew Wilson from day one of 2008 when he kicked the metal trash can towards me. No one did anything about that. So, what they did, it should have been a separation.   He should have been in one building; I should have been in one building. We should have been separated. No one separated us. That's what could have been done……….") Tr.p.35, L21 -22, p.36, L 1-7.

212. Mr. Wilson, in the presence, and under the observation of Ms. Julie Evans, expressed that the entire event, including the fake apology, was a joke.

213**. *Progressive Disciplinary Standards*:**

214. Mr. Wilson's continuing acts of violence came under the Agency's Progressive Disciplinary Standards. Conduct which occurs after progressive disciplinary failed to prevent repeated offenses. See CIA. Bate#000156. See Paragraph 80 Regulation Manual No. #M-60-1.

**EVENT EIGHT July 28, 2011**
**215. Ms. Evan's conversation with Gissentanna Maria about the July 28, 2011 event**
**Julie Evans' Meeting with Maria Gissentanna**

215-A. *No separation Order*

216. Julie Evans did not discuss a separation order or presented to those who were present,

an order for the safety of Plaintiff from Mr. Wilson's recorded historical violence, as late as July

28, 2011:

217. ("The conversation between Ms. Evans and Ms. Marla did not include: (1) any separation orders for Mr. Wilson and Ms. Allen. Seven months later, next to July 27, 2011, a separation order was issued on March 01, 2012, and one month after the February 23, 2012, incident, infra... (2) Mental health Counseling was not discussed as corrective action for Mr. Wilson").

**EVENT NINE AUGUST 29, 2011**

**TWO EVENTS**

218. *Ms. Evans took no Corrective actions as of August 29, 2011.*

*Ms. Evan's* lack of supervision, allowed Mr. Wilson to continue to harass Ms. Allen on

August 29, 2011 and all times preceding August 29, 2011. See Event of August 29, 2011, at

paragraph 25 herein:

219. (" Mr. Wilson walked up and down the hallway past my doorway with an angry face, like he was waiting on me to come out. And the only time I would come out is when I could pair up with a co-worker to walk down the hallway.") Ms. Allen's Deposition Transcript: Tr. P. 52 L.18 -22.  She simply avoided Mr. Wilson as she had for years. Tr.54, L5-8., because she thought nothing would be done based on the lack of corrective action attending the 2008 incident. Tr.54, L 21-22, P55. L- 1. ('I just avoided him") P55, L.8. There was no reason Mr. Wilson need to be in Ms. Allen's work area. Tr.56. L 1 -8. ")

220. All Agency's Parties that engaged in the July 28, 2011 conversation regarding Mr.

Wilson's violence, were fully aware of the physical threat Mr. Wilson posed to Plaintiff's Allen

through his continuing workplace violent behavior, as well as Mr. Wilson's history of workplace violence and racism against Black African American employees and Plaintiff Allen.

221. With this knowledge, all engaged Agency Supervisors and high ranking official at the meeting, had an affirmative duty to take corrective actions for the protection of Plaintiff Allen.

222. In direct violation of the Agency's regulations, said Agency's Officials, on July 28, 2011, intentionally refused to take corrective action to protect Plaintiff from Mr. Wilson's violence and condoned Mr. Wilson' past violence against Plaintiff until then and always thereafter.

### _Duty to Supervise_:

223. All of the Management Officials at the meeting on July 28, 2011, were bound by Agency Regulations that required them to supervise Plaintiff Allen and Mr. Wilson. See Paragraph *(96):*    Responsibility of Supervisor BEP Circular No#60-007 (9/25/2008 (2). Bate #000137.

*Ms. Julie Evans' Continuing Failure to take corrective action dissuaded Plaintiff from exercising her civil rights against harassment, retaliation, race discrimination and intimidation in the workplace*

227. Supervisor Evans did nothing to protect Plaintiff against the following events, including but not limited to the above events:

228. *Event Ten*, where Mr. Wilson constantly harassed Plaintiff and remained in physical striking distance of Plaintiff.

229. *Event Eleven*, where Mr. Wilson and Plaintiff came in contact with each other on the second floor of the Agency's Workplace.  See paragraph 28, with confirmation by Diane Cripps, at paragraph 29. As of September 26, 2011, Mr. Wilson was allowed to enter Plaintiff's workspace and to intimidate Plaintiff. See paragraph 31.

230. With Ms. Evans' permission, Mr. Wilson was allowed to follow Plaintiff Allen throughout the workplace. See paragraph 32, See Foster Sireda Declaration BEP -11-IF Tab 17, P. 00430, Line Q & A#18.

### *Notice to Supervisor Julie Evans of continuation of discrimination, harassment and retaliation by Mr. Wilson against Plaintiff Allen*

231. Plaintiff Allen informed *Julie Evans* that Mr. Wilson was allowed to enter the six-floor workplace simultaneously with Mr. Wilson. See paragraph 33 and 34. As of October 27, 2011, Mr. Wilson was allowed to gain striking distance to Plaintiff Allen, where he intentionally intimidated Plaintiff. See Event Fifteen, paragraph 35, 36.

232. **Plaintiff Allen's request to Director Felix Larry, on August 01, 2011, for help:**

("I am contacting you because after pursuing this with my manager, *Julie Evans* and my Office Chief, *Dr. Goutam Gupta*, no action has been taken") See paragraph 37.

### *EVENT SIXTEEN February 23, 2012 RETALIATION THROUGH ATTEMPTED ASSAULT AND BATTERY WITH A DANGEROUS –DEADLY- WEAPON*

133. Supervisor *Julie Evans'* continuing violations of the Agency Regulations, and her intentional decision to condone Mr. Wilson's workplace violence since April 2008, until and including 1/ 23/ 2012, encouraged Mr. Wilson to attempt to assault Plaintiff's with a deadly weapon, his cane.

234.  Mr. Wilson had previously demonstrated ability and evil intent to Agency Employees, with a deadly intent, with his cane.  See paragraph 74 and 65.

### *Notice to Ms. Evan's that Mr. Wilson was on the sixth floor with Plaintiff Allen:*

235. Ten months before February 23, 2012, on October 27, 2011, Plaintiff had informed Supervisor Evans of Mr. Wilson's presence with her on the sixth floor, and had addressed a letter

to the Agency Director, *Felix Larry on August 01, 2011*, asking for help against Mr. Wilson's violence against her, Plaintiff Allen.

236. Mr. Wilson's lack of physical ability to move as fast as Plaintiff Allen, is the only reason Mr. Wilson's cane did not contact Plaintiff Allen's head on 02/23/ 2012.

237. Evidence is that Mr. Wilson intended to kill Ms. Allen or to at least seriously wound her with a head strike with his cane. Mr. Wilson committed a criminal act of attempted assault and battery upon Plaintiff's person. See paragraph 29, and footnote #7.

238. Known to Ms. Evans, Mr. Wilson admitted, at least to lifting his cane at Plaintiff Allen, allegedly in fear of his own safety.  See infra at Paragraph 40, and 41. Mr. Wilson contradicts his own statement by first stating that he lifted his cane in self-defense, and later stated that the lifting was an involuntary movement. See Foot note #8.

239. *Julie Evans False Statement in support of Mr. Wilson*:


239-A . (" Ms. Evans stated that Mr. Wilson was rushing to the elevator to timely get to a preschedule meeting. Ms. Evan's statement was intended to give a reason for Mr. Wilson rushing toward the elevator and lifting his cane as if he was trying to preserve the elevator through the onboard person to keep the door open. Ms. Evans' statement is contradicted by Mr. Wilson's admissions.  Mr. Wilson also states that in response to Ms. Allen at the elevator, he, Mr. Wilson, did nothing on his part, ("without any action on his part.") *id* at (43).

***Supervisor Evans decided to conspire with the Agency Police to cover-up Mr. Wilson's criminal act of attempted assault and battery on Plaintiff's person***


## *False Statement of Police Officer, Keith Anderson:*

240. To avoid Mr. Wilson being arrested and charged with the criminal offense of attempted assault and battery on Plaintiff Allen, on December 23, 2012, *Police Officer, Keith Anderson,* falsely stated to Ms. Evan's that Plaintiff Allen said that Mr. Wilson struck her with his

cane, rather than the truth *as Police Officer, Keith Anderson* knew*,* Mr. Wilson lifted his cane and struck twice at Plaintiff's Allen's head.

### *Contradiction:*

241. It appears that Keith Anderson stated that (" *Pat reported that Andy  swung the cane at her"*) See footnote #9. Here, Keith Anderson did not say, initially, that Plaintiff said that Mr. Wilson struck her with the cane.

242. **Supervisor Julie Evans** knew that *Police Officer, Keith Anderson* statement was false, because she had spoken previously with Plaintiff and Mr. Wilson, and Mr. Wilson demonstrated to Supervisor Evans how he, Mr. Wilson   lifted his cane, allegedly, in self-defense.

### 243. *Zachary Henderson False Statement***:**

Henderson knowingly made the false statement that Plaintiff Allen said Mr. Wilson struck her with his cane, but later recanted his statement. See paragraph 46 and 47.

245. It was BEP Police **Officer, Stg. Henderson**     , on or about June 04, 2008, warned Julie Evans that:  ("…it appears that Mr. Wilson's action- Workplace violence are escalating") IF-08-p 51.

### *Plaintiff Allen Investigated for making false report*:

246. For the purpose of charging Plaintiff Allen with making a false statement, the Agency opened an intensive investigation.  After the investigation of what Plaintiff Allen said, all who accused Plaintiff of making a false statement, recanted by stating they *might have* misunderstood what Plaintiff Allen said. See footnote 10.

247. There was no mistake in that Plaintiff stated always that Mr. Wilson struct at her with his cane.

249. All of her accusers clearly understood that Plaintiff Allen never said that Mr. Wilson struck her with his cane.

### *No Investigation was conducted to determine whether Mr. Wilson struct twice at Plaintiff Allen with his cane.*

250. The Agency Police Department and Supervisor Evans did not investigate whether Mr. Wilson struct twice at Plaintiff Allen with his cane, even though both Supervisor Evans and Mr. Wilson provided conflicting statements about the event, ranging from Mr. Wilson did nothing, to he raised his cane in self-defense, and that he raised his cane rushing to the elevator to not be late for a meeting, to the excuse that Mr. Wilson raised his cane because of nervous condition.

251. Mr. Wilson contradicted   all the false statements, including his own initial statement, as to why he raised his cane, by admitting he raised his cane at Plaintiff Allen, but in self-defense.

*No Investigation whether Mr. Wilson struck twice at Plaintiff's head with his cane*

252. Ripe for an investigation were several issues: (i) whether Mr. Wilson raised his cane involuntarily, because of a nervous condition, (ii) whether Mr. Wilson raised his cane to secure the elevator to rush to a meeting, as claimed by Supervisor Evans, (iii) whether Mr. Wilson raised his cane at Plaintiff Allen in self-defense, as claimed by Mr. Wilson, or (iv) whether Mr. Wilson ("lifted his cane") and struck twice at Plaintiff's Allen's head, and finally, (v) whether there were camera footage capturing the events of December 23, 2012 elevator incident?

### *Failure to Investigate Discrimination Complaint Supports acts of Aiding and Abetting and acts of Retaliation* See Event Twenty *ld* at 54.

253. Said participants in making the false statement acted in concert in aiding and abetting Ms. Evan's effort to cover up for Mr. Wilson and to prevent the imposition of corrective action

and criminal charges. They intentionally and knowingly accused Plaintiff of falsification to discourage her from pursuing her EEO Claims against Mr. Wilson. In furtherance of their efforts, they never investigated Plaintiff's Allen's claims of attempted assault and battery on the initial Agency administrative level.   The investigation findings on the falsity was Plaintiff never stated that Mr. Wilson struck her with the cane. *Id a*t 52& 53.

### *Supervisor Evans took no corrective action for the 12/ 23/ 2012 event. See Event Twenty -One.*

254. **Ten Foot Rule**: Plaintiff Allen had, for many years, did all she could to avoid Mr. Wilson's violence against her in the workplace. The suggested voluntary 10-foot rule was nothing more than a pretext of corrective action.  See paragraph 56 & see footnote 11. page 29. Record evidence reveals the ineffectiveness of the 10-foot separation order. See Event Twenty-Two, paragraph 62 and event twenty-three. Admission that the separation order was never intended to constitute corrective action because separation was only possible with Mr. Wilson and Plaintiff Allen being housed in separate buildings.  See Paragraph 63 & 63-A, where Plaintiff Allen appealed to legal counsel, *Washington, Nichole.*

### *Interpersonal conflict*

255. The following classification by the Labor Management Relation Officials were to trivialize the deadly threat on Plaintiff's Allen's life as a ("***interpersonal conflict")***. Record evidence is that Plaintiff Allen never had a friendly relationship with Mr. Wilson. See Foot note 12 & paragraph 57, 58 & 59.

> (*The advice from Labor Management Relations was that this was an **interpersonal conflict** and that an Order of Separation for both parties should be put into effect immediately.*" See Evans' Declaration, Bate No.00369, answer to question 32. Appendix page 12.

68

***Hostile Work Environment***:

256. Each of Supervisor Evan's discrete acts promoted, condoned and encouraged Mr. Wilson to create for Plaintiff a hostile, abusive workplace environment for Plaintiff, Patricia Allen.

257. Each of Supervisor Evan's discrete acts substantially caused Plaintiff Patricia Allen to suffer an abusive hostile work environment.

259. Each of Supervisor Evan's discrete acts and omission to act, was in direct violation of the Agency Regulations against workplace discrimination in the Agency.

260.  Supervisor Evans, as both Mr. Wilson and Plaintiff Allen's supervisor, and a named discriminatory party, was disqualified, by the Agency's Regulations, as mentioned herein, to be the deciding official for corrective actions regarding Mr. Wilson's workplace violations and violence discriminatory and retaliatory behavior.

***Disparate Treatment***:

261. The Agency Police Department, its Police Officers, and Supervisor Julie Evans, treated other employees, such as Mr. Andrew Wilson, similarly situated as Plaintiff, more favorably than Plaintiff because Mr. Wilson was not falsely accused of falsification as was Plaintiff; the false allegations that Plaintiff stated that Mr. Wilson struck her with his cane, was thoroughly investigated in contrast to Plaintiff's allegations that Mr. Wilson struck twice at Plaintiff's head with his cane. Plaintiff' Allen's claims that Mr. Wilson struct twice at her head with Mr. Wilson cane was not investigated initially on the agency level.

262. The non-investigation of Ms. Allen's claim; ("*whether Mr. Wilson struct twice at Plaintiff Allen's head with his cane on February 23, 2012*") was prejudicial to the EEO Investigation into the issue on the next level, because the Agency had concluded, without an

investigation, that Mr. Wilson did not strike twice at Plaintiff Allen's head with his cane on 02/23/2012.

263. Whether Mr. Wilson struck twice at Plaintiff's head with his cane, as stated by Plaintiff Allen, was never investigated for the truth at any of the investigative levels.

264. The lies, contradictions and admissions of Mr. Wilson and others who covered up for Mr. Wilson where not investigated for a finding whether the false statements were knowingly intentional for the purpose of protecting Mr. Wilson, or where they merely act of gross negligence or incompetence.

## INVESTIGATION OF GARY CLOTH'S CLAIMS [18]

265. Similarly situated Employee,   Gary Cloth's claims against Mr. Wilson for threatening Gary Cloth with his cane, were investigated, while Plaintiff's identical claims against Mr. Wilson were not investigated. *See Event Twenty-Four*, at 65,66,67,68,69.  *See footnote #17*.

266. Mr. Wilson's violent act with his cane, which he used as a deadly weapon to strike at Plaintiff's Allen's head, the kicking of the metal can at Plaintiff's Allen's head on April 30, 2008, and all other assaults, such as Mr. Wilson spitting in Plaintiff's face, were classified by the Agency Management Official, as an ("***interpersonal conflict***") as oppose to the classification of Mr.

---

[18] Mr. Cloth reported the incident to the Office of Security on June 29, 2012. IF2, Tab40, p.554. A violent Intervention Team was empaneled on July 03, 2012 to discuss the incident ("" July 2012 VIT Panel" The July 2012 VIT Panel recommended that the Office of Investigation pursue a formal internal investigation.  The July 2012 VIT panel also recommended the following courses of action: 1) that Ms. Evans provider. Wilson with a copy of the Threats Policy and explain it to him;2) that she advises Mr. Wilson that disciplinary action could be forthcoming; 3) that Ms. Evans await the results of the investigation before disciplining Mr. Wilson; 4) that Ms. Evans counsel Mr. Cloth about confronting Mr. Wilson rather than raising it with his supervisor; and 5) that Ms. Evan adjust Mr. Wilson's work assignments to minimize his interaction with Mr. Cloth. If 2, Tab.40, p.555.

Wilson's identical acts against Gary Cloth as ( *violence, Harassment in the Workplace*), which was a clear violation of the Agency's Discrimination Regulations. *See Paragraph 70*.

267. **Gary Cloth,** of whom Mr. Wilson had not harassed for eight (8) years, as he had Plaintiff Allen, onetime incident with Mr. Wilson was not classified as an ("***interpersonal conflict")*** and not casually dismissed as was Plaintiff's Eight Years of harassment by Mr. Wilson.

268. *Gary Cloth* claims against Mr. Wilson for the truth was investigated to the extent that Mr. Wilson was forced to admit that he intended to make physical contact with   Gary Cloth 's person with his cane.[19] Mr. Wilson's intentional assaults upon Plaintiff Allen's person falls short of the definition of ("Interpersonal Conflict") An assault is not interpersonal. An assault is a crime. See Ex.#6, Gary Cloth's Declaration at answer to Question 7.[20]

### *Similarly situated employee***:**

269.   On January 17, 2013, Mr. Wilson violently threaten Employee Kenneth Kippeman with physical violence, as he did Plaintiff Patricia Allen, with his cane.

---

[19] **Interpersonal conflict definition**

**Interpersonal conflict** occurs when a person or group of people frustrates or interferes with another person's efforts at achieving a goal. According to some researchers, **conflict** can consist of three different components. The behavioral component of **conflict** involves someone interfering with the objectives of another person.

[20] (Response: I've known Andy, and have worked with him off and on off, for over Thirty-six years, as long as I've been at BEP. He's always had a problem With Anger. It has often been hard and challenging, emotionally, for me to work With him. I do feel compassion for him but I'm telling it as it is. Also, he has a Close and long -time working relationship with a co-worker, Rose Koleear, who "enables" him and doesn't really tell the truth about him, ie. "downplays" his Expressions of anger. Also, I strongly believes that those in authority at the BEP (over the years) have "enabled " Andy by not dealing with the problem, down playing it and / or just putting up with Andy and his expressions and occasional Outburst of anger. Sadly, for me, I believe our boss Julie Evans, has downplayed Andy's angry expressions toward his co-worker and had, thereby been enabling him. I like and don't really trust Julie to deal honestly And correctly with this situation concerning Andy and his affected on his co-workers. See responses to questions 9,10, and 15.

270. Kippeman's claims were investigated, Plaintiff's nearly identical claims were not investigated. See Event Twenty-Eight.

*271. **Race Discrimination***: Each of Supervisor Evan's discrete acts was substantially motivated by Plaintiff race.

*272. **Retaliation:*** Each of Supervisor Evan's discrete acts was substantially intended as acts of retaliation against Plaintiff for Plaintiff's engaging in EEO protected activity and EEO claims against, Ms. Julie   Evans' close friend, Mr. Andrew Wilson and Ms.  Julie Evans.

273. For reason motivated by race, retaliation and harassment against Plaintiff, Supervisor Julie Evans used Mr. Wilson as her agent to inflict upon Plaintiff severe mental and emotional distress.

274. *Harassment:* Each of Supervisor Evan's discrete acts was substantially intended to harass Plaintiff, to retaliate against Plaintiff and to punish Plaintiff for participating in EEO activities and for bringing a Discrimination Complaint against Supervisor, Julie Evans per se.

## **AGENCY VIOLATIONS**

275. *Negligent selection, supervision and retention of an incompetent Employee:*

276. The Agency, always herein, negligently hired each of the management employees who knowingly and maliciously allowed, caused and condones and promoted Mr. Andrew Wilson violence in the workplace against Plaintiff.

277.  The head of the Agency knew or should have known of the Management Employees incompetency after many more than ten years of Mr. Wilson's workplace violence at the Agency.

### *Notice to the director of the agency Felix Larry*.

278. On August 01, 2011, Plaintiff Allen informed **Felix, Larry**, the then   Director of the Agency, that she was being harassed by Agency Officials and begged for his help. Director Felix Larry was fully aware of the Agency's discriminatory acts against Plaintiff and the non-supervision of Mr. Wilson by Supervisor Evans. Felix, Larry was made aware that Supervisor Evans was doing absolutely nothing to protect Plaintiff from Mr. Wilson's violence against Plaintiff Allen. To Director Felix, Larry, Plaintiff Allen expressed her fears and begged for help, which, was never given, notwithstanding Felix, Larry's policies of ZERO TOLERANCE OF HARASSMENT IN THE WORKPLACE. Exhibit #5.

279. Notwithstanding the Agency notice and knowledge of Mr. Andrew Wilson's ten-year history of workplace violence, the Agency intentionally retained the incompetent management employees, condoned the employees' lack of supervision over Mr. Wilson and promoted Mr. Wilson's violence, racial bias against Plaintiff Allen, and encouraged Mr. Wilson to intimidate Plaintiff Allen, created a hostile adverse workplace environment for Plaintiff and to physically assault Plaintiff in the workplace.

280. As a direct and proximate result of Defendant's collective acts and omissions, Plaintiff suffered economic loss, severe mental and emotional distress in the form of morbid fear of her life and safety in the workplace, medical bills and permanent degradation and a loss of self-worth.

### JULIE EVANS
### CONTINUING VIOLATION DOCTRINE
### Continuing course of employment discrimination

281. The course of discrimination, as stated herein, relative to all discrete acts and those not reported by Plaintiff to the Agency because of her fear of retaliation and physical assault, constitutes a continuing course of discrimination dating back to April 30, 2008.

### *Substantive basis for claim of continuing Discrimination*:

282. Because Supervisor *Julie Evans* supervised both Plaintiff, Patricia Allen and Assailant, Andrew Wilson, and was the deciding official for all complaints by Plaintiff against *Julie Evans* and *Andrew Wilson*, Supervisor Evans maintained a prejudicial position, and her prejudice against Plaintiff is evidenced by the undisputed record facts.

283. Each decision regarding all Plaintiff's complaints against Julie Evans and Andrew Wilson, or simply against Andrew Wilson, was prejudicial against Supervisor Evans, and each decision on the complaints by Supervisor Evans was self-serving and prejudicial against Plaintiff, because the outcome of the complaint carries risk to the Supervisor Julie Evans' career.

284. Evidence is that *Supervisor Julie Evans* Punished Plaintiff for asserting her rights, placed Plaintiff in fear of asserting her rights to be free from employment discrimination, preventing Plaintiff from asserting her rights in fear of retaliation, which continued even when Plaintiff did not report acts of harassment.

285. By EEOC Standards, Agencies must avoid conflicts of position or conflicts of interest as well as the appearance of such conflicts, this the agency did not do from April 30, 2008 until present.

286. From April 30, 2008 until present, the Agency, through *Julie Evans* and other Management Officials, as named herein, violated 42 U.S.C. § 2000e-3(a) Section 704 of Title VII that protects Plaintiff Allen from retaliation for opposing discriminatory or harassing practices or for participating in an inquiry into discriminatory or harassing practices in the workplace.

## JULIE EVANS DISQUALIFIED AS THE DECIDING OFFICIAL

*Violations of Agency Regulations*:

287. As a named discriminatory official, *Supervisor Julie Evans* was disqualified to decide or to participate in any decision regarding or relative to her and Mr. Wilson, as discriminatory parties. Plaintiff, as required by Agency Regulations, reported her claims to the ("next higher level of supervision- to Attorney Washington, to the Head of the Agency and other high management officials, as stated herein, and Plaintiff also reported the harassment to the Office of Security via the DCF Central Police Operations Center (CPOC)" See infra at 84. DEP's Internal Communications May 30, 2013, CIA Bate#00134.  See also infra 86 RESPONSIBILITY OF SUPERVISOR BEP Circular No# 60-007(9/25/2008) (2). Bate #000137, and 87.  **AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (6) (b) (1) RESPONSIBILITIES- Supervisor to ensure safe work environment**

288. **Violation of Circular No.60-00.7 (9/25/08)** paragraph#2 required Ms. Evans and Gupta to recluse themselves, as named discriminatory parties from the decision process. Infra at (90).

289. **OFFICIAL REPRIMAND: 2-3. (b),** was violated because notices to Mr. Wilson did not include ("(3) Caution the employee that repetition of any misconduct, or failure to correct or improve the deficient conduct, will result in more severe disciplinary action, up to and including removal"), to prevent future discriminatory action by Mr. Wilson. Infra at 78.

290.  **REGULATION MANUAL NO#M-60-1.** ( **c** ) Conduct which  occurs after progressive disciplinary failed to prevent repeated offenses. See **CIA. Bate#000156. Infra at (80).**

291. Mr. Wilson's many acts of violence, as stated herein, were progressive and adequately severe to merit the imposition of the Agency's Progressive Disciplinary Policy, which was not applied to prevent Mr. Wilson's workplace violence.

292. *Manual No. M-60-1 (February 22, 1985 Paragraph (3)*
*Mandatory regulation by the use of the word ("Shall")*

293. The Agency did not provide a workplace free of harassment, intimidation and reprisal for Plaintiff from April 30, 2008 until present, in violation of the above regulation. See infra at 85.

294. *Separation order violated:*

295. **AGENCY 'S CIRCULAR No.60-00.7 of 7/25/2008 (5) (b) (1)** Provides (" The employee involved may be given a letter instructing them to refrain from any contact with each other.")  The ineffective 10-foot separation order was issued many months after Mr. Wilson had assaulted Plaintiff, and was known to be inadequate for the purpose intended. Infra at 94 & 96. Relocating either Mr. Wilson or Plaintiff Allen was the only solution for elimination of Mr. Wilson's violence against Plaintiff Allen, as corrective action. The corrective action was never implemented.

MATERIAL AND SEVERE ADVERSE EMPLOYMENT ACTION AND CONSEQUENCES

296. Because of Defendants acts and omissions, as stated herein, Plaintiff Patricia Allen, a member of a protected class who engaged in EEO Protected  Activities, suffered as explained herein, severe material adverse employment consequences that significantly altered the terms of her employment in the Agency because; as a condition of Plaintiff Allen's  employment, she was forced to endure a hostile work environment, retaliation for participating in EEO Activities, and

having to fear for her life, and physical safety daily since April 30, 2008, heretofore, and having

to run through the common place of the Agency to avoid being physically attacked by Assailant,

*Andrew Wilson*, and having to pare with other employees for her safety in the workplace.

### *Relief sought*:

297. Plaintiff seeks the maximum award and all relief provided by Title VII and Title 42

U.S.C 1988, including but not limited to compensatory damages, economic loss and reasonable

attorney's fees and cost of the litigation.

### COUNT FOUR
### REFUSAL TO PROMOTE AND TO SELECT PLAINTIFF FOR ADVERTISED EMPLOYMENT

### *DENIAL OF CAREER GRADE INCREASE*

298. On April 20, 2009, Plaintiff's Supervisor, Julie Evans, denied Plaintiff her career-

ladder promotion and its monetary compensation to a GS-7 Supply Technician.

299. Plaintiff, as a matter of right, was entitled to the career ladder promotion.

300. Plaintiff's job performance presented no impediments to her entitlement to her

promotion.

301. Supervisor Evans pretextually claimed the denial of the career promotion was based

on Plaintiff need for more training and better on the job performance. The true reason for the

denial was substantially motivated by retaliation.

302. Although, Supervisor Evans awarded Plaintiff with good employment performance

ratings during the mist of her retaliatory decision to deny Plaintiff the career ladder promotion, the

performance rating was intended to represent a non-discriminatory atmosphere and reason for denying Plaintiff's entitled promotion.

303. Supervisor Evans' reasons for denying Plaintiff her career ladder promotion was substantially motivated by discrimination based on retaliation against Plaintiff for bringing a discrimination complaint against Supervisor Evans and her close friend, Andrew Wilson, and because of Plaintiff 's race.


### Refusal to select for a GS-9/11 Inventory and Destruction Specialist Position

304. In 2010, applied for, but was not selected for a GS-9/11 Inventory and Destruction Specialist Position.

305.  For months Plaintiff has performed all aspect, duties and requirements for the GA-9/11 Inventory and Destruction Specialist Position, and was more qualified for the person selected for the position who was not a member of the protected class.

306.  Plaintiff was not selected for the position because of her race, and retaliation by the Agency against Plaintiff for participating in prior EEO activities against her Supervisor, Julie Evans, Andrew Wilson, and other high management officials.

**Request for Relief:**

307. Plaintiff moves the Court to declare that Plaintiff is entitled to the Career Ladder position and the monetary payment for time during which she was denied the promotion.

308. Plaintiff moves the Court to declare her entitlement to the GS-9/11 Inventory and Destruction Specialist Position, and the monetary payment for the time she would have occupied the position had she not been discriminated against.

## COUNT FIVE
## CLAIM FOR INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS

**309. Plaintiff restates and re-alleges all claims, facts in their entirety that precedes Count Five and incorporate the same herein, as if the same were expressly stated.**

310. Defendant(s)' acts and omissions, including but not limited to  their decision to allow Andrew Wilson to assault and battery Plaintiff continuously for many years , was knowingly, intentionally and with the specific intent to punish Plaintiff for engaging in EEO Protected Activities, and were racially and retaliatorily  motivated with a reckless  direct disregard for Plaintiff physical and mental safety,  and the same caused Plaintiff severe mental and emotional distress. Defendant(s)' reckless and intentional decision to punish Plaintiff for her EEO Activities is shocking to the conscious of a sane society and adverse to the administration of justice, because Defendant's acts of intimidation persuaded and caused Plaintiff and other employees similarly situated to not report EEC Violations in fear of reprisal from the Agency.  In fear of retaliation, Plaintiff, in morbid fear of her safety in the workplace, did not report to her Supervisor, Julie Evans, Mr. Wilson's violence against her because Julie Evans had and continued to retaliate against Plaintiff for her EEO Activities from 2008 until present, and caused Plaintiff to be treated disparately.

Plaintiff prays for damages in the amount of $3,000,000.

Plaintiff prays for the award of reasonable attorney's fees and cost of litigation.

Plaintiff request a trial by jury on all claims.


Respectfully submitted,
Harry T. Spikes, Sr. DC Bar 372091

*Harry T. Spikes Sr.* DC Bar# 372091
P.O. Box 23828
L'Enfant Plaza S.W.
Washington, DC 20026
(202) 288-4175
harryspikes@gmail.com