# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PATRICIA ALLEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1214 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13 |
| | : | | |
| STEVEN T.  MNUCHIN, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

Patricia Allen brings this employment discrimination action against Steven Mnuchin, the Secretary of the Treasury, in his official capacity.  Ms. Allen alleges that her employer, the United States Bureau of Engraving and Printing ("BEP"), discriminated against her, retaliated against her on the basis of her Equal Employment Opportunity ("EEO") complaints, unfairly denied her two promotions, and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*

In a pre-answer motion, BEP moves to dismiss Plaintiff's retaliation claim (Count One), disparate treatment claim (Count Three), harassment claim (Count Four), and race and sex discrimination claim (Count Six) as duplicative of Ms. Allen's hostile work environment claim (Count Two).  *See* Def.'s Mot. Dismiss and Mot. Part. Summ. J., ECF No. 13.  BEP also moves for partial summary judgment on Ms. Allen's denial of equal employment opportunity claim (Count Five).  *See id.*  Because Ms. Allen has voluntarily withdrawn her denial of equal employment opportunity claim, including two non-promotion allegations, *see* Pl. Opp'n, ECF

No. 14, the Court will dismiss that claim. And to the extent that Ms. Allen's claim of race and

sex discrimination does not present any unique factual allegations or legal theories, the Court

will partially dismiss that claim. But because Ms. Allen's Amended Complaint states a plausible

claim to relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), for, respectively, 1) retaliatory

hostile work environment; 2) hostile work environment due to race discrimination; and 3) hostile

work environment due to gender/sex discrimination, the Court will deny BEP's motion to

dismiss Plaintiff's other claims.[1] In so ruling, the Court cautions that, for each of these hostile

work environment claims, parties' future submissions must provide more analytically crisp

arguments that connect the alleged facts or rebuttals to each element of the hostile work

environment legal standard articulated by the D.C. Circuit in *Baird v. Gotbaum* ("*Baird I*"), 662

F.3d 1246, 1248 (D.C. Cir. 2011) and *Baird v. Gotbaum* ("*Baird II*"), 792 F. 3d 166, 168 (D.C.

Cir. 2015).

## II.  FACTUAL BACKGROUND[2]

Patricia Allen is an employee at the United States Department of the Treasury's Bureau

of Engraving and Printing. Am. Compl. ¶ 12, ECF No. 12.[3] Ms. Allen self-identifies as an

---

[1] As Part IV details, because Plaintiff consistently advances a hostile work environment legal theory as the operative legal standard, *see, e.g.,* Pl. Opp'n at 5 (quoting *Meritor* "discriminatory hostile or abusive environment" standard, 477 U.S. 57, 64–85 (1986)), the Court construes Plaintiff's sprawling and disorganized Amended Complaint as pleading multiple hostile work environment claims derived from overlapping factual predicates.

[2] Apart from Plaintiff's non-selection claims, which Plaintiff has voluntarily dismissed, *see* Pl. Opp'n at 51, Defendant does not contest the basic reporting of events in its motion to dismiss. Accordingly, the Court's reporting is drawn from factual allegations pled in the Amended Complaint.

[3] Throughout this Memorandum Opinion, the Court is limited to the Amended Complaint, ECF No. 12, which supersedes the facts or claims stated in Plaintiff's Complaint, ECF No. 1. *See Nat'l City Mortg. Co. v. Navarro*, 220 F.R.D. 102, 106 (D.D.C. 2004) ("Because

African-American woman with dark complexion, *id.* at ¶ 10, and asserts ongoing workplace discrimination on the basis of these characteristics. She avers that a series of problematic encounters with a white male co-worker, Andrew Wilson, subjected her to abusive and dangerous workplace conditions and argues that BEP's failure to redress Mr. Wilson's problematic behavior created a hostile work environment. *Id.* at ¶ 1. Plaintiff further contends that BEP's actions represent disparate treatment of Ms. Allen and other similarly situated employees on the basis of race and sex, *see id.* at ¶¶ 1, 10, and that BEP retaliated against her when she reported Mr. Wilson's discriminatory behavior and when she complained about the responses of her supervisors, Julie Evans and Dr. G. Gupta, *see id.* at ¶¶ 4, 10–11.

The first reported incident between Plaintiff and Mr. Wilson occurred on April 30, 2008. *Id.* at ¶ 12. That day, Ms. Allen was working with another African-American female when Mr. Wilson kicked a trashcan toward Ms. Allen's head while yelling at her. *Id.* at ¶¶ 12–14; *see also* Compl. Ex. 4, ECF No. 1-4. Ms. Allen reported the incident to her immediate supervisor, Julie

---

the plaintiff's amended complaint supersedes the original complaint, the amended complaint is now the operative complaint.") (citing *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884); *Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003); 6 *Fed. Prac. & Proc. 2d* § 1476). Ms. Allen attached nine Exhibits to the original Complaint, none of which is included in the Amended Complaint, on which her arguments rely, and to which her Amended Complaint refers. In deciding a Rule 12 motion, a court may properly consider materials not attached to the complaint where they are incorporated into the complaint by reference. *Mpoy v. Rhee*, 758 F.3d 285, 290 n.1 (D.C. Cir. 2014) (citations omitted) (affirming district court's consideration of email incorporated by reference in its determination of Rule 12 motion); *see also Vila v. Inter–Am. Inv., Corp.*, 536 F. Supp. 2d 41, 46 n.5 (D.D.C. 2008) (citing Kurtis A. Kemper, *What Matters Not Contained in Pleadings May Be Considered in Ruling on a Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) without Conversion to Motion for Summary Judgment*, 138 A.L.R. Fed. 393 (1997)). Because BEP did not argue that these documents should be excluded from the Court's review, the Court treats these Exhibits as incorporated by reference.

Evans, and the supervising manager, Dr. G. Gupta, as well as to BEP's Police Department and to its Equal Employment Opportunity Department. Am. Compl. at ¶ 16. Ms. Evans did not remove Mr. Wilson from Plaintiff's physical proximity, as Ms. Allen requested, and instead moved Mr. Wilson "around the corner on the same floor where Plaintiff worked," leaving the two employees in "close physical contact." *Id.* at ¶¶ 18–20.

Ms. Allen and other BEP employees reportedly experienced additional negative interactions with Mr. Wilson during the summer months. On June 4, 2008, Mr. Wilson told another African-American female, Rachelle Wright, that "there was no fuc… way a Black man will become president."[4] *Id.* at ¶ 26. Though Ms. Allen was not present for Mr. Wilson's statement to Ms. Wright, Ms. Allen accompanied Ms. Wright to the BEP Police Department to report the incident. *Id.* at ¶ 27. And on June 19, 2008, Ms. Allen sent an email to her supervisors reporting that "Andy [Wilson] have [sic] come into our office 201-26 every day during lunch time to wait on Rose,"[5] which made her "very much afraid." *Id.* at ¶ 25. Ms. Allen also filed an EEO complaint against Mr. Wilson alleging that BEP's failure to discipline him for his behavior permitted him to engage in ongoing harassment of black female employees.[6] *See*

---

[4] Paragraph 130 of the Amended Complaint states that this event occurred on June 4, 2004. This Court construes paragraph 130 as errata and accepts the June 4, 2008, date stated in paragraph 26 because the statement appears to refer to President Barack Obama, who did not run for office until the 2008 election cycle. *See* Adam Nagourney & Jeff Zeleny, *Obama Formally Enters Presidential Race*, N.Y. Times (Feb. 11, 2007), https://www.nytimes.com/2007/02/11/us/politics/11obama.html.

[5] "Rose" appears to be another co-worker, Rose Kolesar. *See* Compl. Ex. 6 at 3, ECF No. 1-8 (describing "[c]lose and long-time working relationship" between Mr. Wilson and Ms. Kolesar).

[6] Although no date is specified in Plaintiff's Amended Complaint, the Amended Complaint states that this EEO complaint was filed after the April 30, 2008 incident, *see* Am. Compl. at ¶¶ 23–24, and the referenced complaint is dated July 22, 2008, *see* Compl. Ex. 1, ECF No. 1-1. The Court thus infers that this EEO complaint was filed on July 22, 2008.

Compl. Ex. 1, ECF No. 1-3. Another African-American female employee, Rachelle Wright, provided a declaration in support of this EEO complaint. *See* Compl. Ex. 3, ECF No. 1-5. Ms. Wright stated that only employees who had filed an EEO complaint in their office were asked to participate in a June 23, 2012, office clean-up. *Id.* Another employee who self-identifies as a Hispanic female, Jessica Xiomara Escobar, also reported that she was "a victim of Mr. Wilson's inappropriate aggressive behavior" in a 2008 statement in support of Ms. Allen's EEO complaint. Compl. Ex. 2, ECF No. 1-4.

Problematic interactions between Mr. Wilson and other employees then appear to have paused from 2008 to mid-2011.[7] But the situation heated up once more on July 27, 2011, when Mr. Wilson coughed on Ms. Allen and referred to her as an "idiot stupid person." Am. Compl. at ¶ 10. The next day, BEP convened a Violence Intervention Team ("VIT")[8] that determined that Ms. Allen and Mr. Wilson should refrain from any verbal communication.[9] *Id.* at ¶ 28.

Ms. Allen filed additional complaints with management after the July 27, 2011 event. Though the precise chronology is not clear from the pleadings, Ms. Allen appears to have contacted other BEP personnel about the July 27th incident, including Associate Director Judith

---

[7] It is possible that there were other intervening events, but the pleadings are ambiguous on this point. For example, Exhibit 4 of the original Complaint references a July 1, 2009, complaint of discrimination to the EEOC. *See* Compl. Ex. 6, ECF No. 1-6. The factual details that gave rise to this EEO complaint are not reported in the Amended Complaint, nor is the referenced EEO complaint included in the pleadings, and so the Court will not consider it here.

[8] Plaintiff's Amended Complaint discusses a "*Violent Intervention* Team." *See, e.g.*, Am. Compl. at ¶¶ 28, 35–38. Because BEP policy provides for a "Violence Intervention Team," *see* Compl. Ex. 5 at 11, ECF No. 1-7, the Court takes Plaintiff to be referring to such a Violence Intervention Team and uses this term.

[9] The Amended Complaint subsequently describes an incident in which "Mr. Wilson coughed saliva into Plaintiff's face" as taking place on July 27, 2012. Am. Compl. ¶ 32. However, it would make little sense for BEP to convene a Violence Intervention Team for no reason on July 28, 2011, as the Amended Complaint reports. *See id.* at ¶ 28. This Court accordingly interprets the July 27th incident as occurring in 2011.

Diaz-Myers. *Id.* at ¶ 44. Ms. Diaz-Myers informed Ms. Allen that, because Ms. Allen had already called Chief of Security Will Levy, BEP protocol did not permit Ms. Diaz-Myers to take any action until Mr. Levy met with supervisors "to formulate an approach to intervene into the situation" so that Ms. Allen "d[id] not feel threatened." *Id.* On August 1, 2011, Ms. Allen wrote to BEP Director Larry R. Felix to report that she had not received any update regarding such a meeting. *Id.*

Several further interactions between Plaintiff and Mr. Wilson occurred in late summer and early fall of 2011. On August 24, 2011, Mr. Wilson began pacing in front of Ms. Allen's work area, "staring angrily and menacingly, as if he were looking for an opportunity to physically attack [her]." *Id.* at ¶ 29. On September 26, 2011, Mr. Wilson entered Ms. Allen's work space and again stared "angrily and menacingly." *Id.* at ¶ 30. And on October 26, 2011, Mr. Wilson entered the area where Ms. Allen was eating lunch and stared at her "in an angry menacing manner." *Id.* at ¶ 31.

After these interactions, the conflicts again appeared to briefly cease until early 2012, when several episodes involving Mr. Wilson and other employees occurred. On February 23, 2012, Mr. Wilson approached Ms. Allen, raised his cane at her, and "struck twice at Plaintiff's head." *Id.* at ¶ 34. That same day, BEP convened a VIT once more. *Id.* at ¶ 35. This VIT classified the February 23rd episode as an "internal personal conflict,"[10] *id.* at ¶¶ 35–36, and recommended once more that Ms. Allen and Mr. Wilson refrain from all verbal communications, *id.* at ¶ 37. BEP also responded to the February 23rd episode by issuing a memorandum on

---

[10] Plaintiff's Amended Complaint refers to this VIT as the "second" such team in one paragraph, then refers to "[t]he Team" as the "Third Violent Intervention Team" in subsequent text. *See* Am. Compl. at ¶¶ 35–37. Because this is the second description of a VIT in the pleadings, and there is no clear differentiator between the second and third VITs, the Court treats all of this portion of the Amended Complaint as referring to a single, second VIT.

March 1, 2012 that directed the two individuals to stay ten feet apart in the workforce ("10-Foot Separation Order"). *Id.* at ¶ 38. Ms. Allen followed up on this incident by contacting a BEP attorney, Nicole Washington, to report Mr. Wilson's anger and to complain that he was "carrying a ***weapon*** [his cane] in the BFP [sic]" when he did not require the cane for walking. *Id.* at ¶ 43. Ms. Washington's documentation of the incident suggests that Mr. Wilson saw the interaction differently, contending that he was "a bit upset about a delay in getting to a men's room." *Id.* In their investigation of this incident, supervisors and the VIT accused Ms. Allen of lying by asserting that Mr. Wilson "struck her with his cane," when in fact the accusation was that Mr. Wilson "struck *at* her with his cane." *Id.* at ¶ 64 (emphasis added).

As Ms. Allen pursued administrative interventions, there were soon further negative interactions between Mr. Wilson and BEP employees, including but not limited to Ms. Allen. On March 21, 2012, employee Diane Crips wrote a letter to the office of security to report that she witnessed Mr. Wilson viewing Ku Klux Klan material on his computer during work hours. *Id.* at ¶ 128 & n.4. In response, Dr. G. Gupta asked Ms. Evans to speak with Mr. Wilson and "counsel [him] not to view racial [sic] inappropriate material on a BEP computer if such behavior . . . with malicious intent is substantiated."[11] *Id.* at n.4.

On June 25, 2012, Mr. Wilson "angrily lifted his cane" at Ms. Allen in the hallway, "as if he was trying to gain a striking distance" to her. *Id.* at ¶ 39. That same day, Mr. Wilson also lifted his cane to strike another employee, Gary Cloth, *id.* at ¶¶ 46, 84, and remarked that he "was not joking," *id.* at ¶ 86. This interaction led Mr. Cloth to complain to his supervisors and to refuse to work alongside Mr. Wilson. Compl. Ex. 6, ECF No. 1-8 ("I had my own incident with

---

[11] Plaintiff's Amended Complaint states that this email was written by "Gupta Goutam." The Court takes this individual to be the same "Dr. G. Gupta" referenced elsewhere in the pleadings. *See, e.g.*, Am. Compl. at ¶ 16.

Andy, in late June [2012]. . . . I informed my boss, Julie Evans, and the acting Office Chief at the time . . . that I considered working with Andy to be Working [sic] in an unsafe and hostile working environment and I was no longer willing to do so."); *see also* Am. Compl. at ¶ 85. A VIT convened to address the interaction between Mr. Cloth and Mr. Wilson. *Id.* at ¶ 89. This VIT classified Mr. Wilson's "use of his cane to strike Gary Cloth" as "use of a deadly weapon and an attempted assault." *Id.*

The next interaction between Plaintiff and Mr. Wilson occurred on July 18, 2012, when Mr. Wilson verbally threatened Ms. Allen in the "hearing presence" of Ms. Evans with the warning, "if you tell one more thing on me." *Id.* at ¶ 41; *cf.* Compl. Ex. 6, ECF No. 1-8 (Mr. Cloth reports Mr. Wilson's "intimidating remark," as related to him by Ms. Allen). Ms. Allen also reported this incident to BEP, to Ms. Evans, to BEP police, and to BEP's Equal Employment Office. Am. Compl. at ¶ 42.

The Amended Complaint does not allege any further incidents until 2013, when Mr. Wilson had a similar interaction with another co-worker, Kenneth Kippeman. On January 17, 2013, Mr. Wilson "violently threaten[ed]" Mr. Kippeman. *Id.* at ¶ 106. Mr. Kippeman contacted Ms. Evans and requested an explanation for Mr. Wilson's "attack[]" at the vending machine, along with an apology. *Id.* at ¶ 107. Neither the specific result of this request nor the details of any administrative action are reported in Plaintiff's Amended Complaint or in the exhibits attached to the original complaint.[12] Ms. Allen asserts that, in contrast to BEP's classification of her interactions with Mr. Wilson as a "personal conflict" that was insufficiently investigated, *id.*

_____

[12] The Court notes, however, that Plaintiff's own Opposition to Defendant's Motion to Dismiss states that her "new Supervisor provided her a workplace in a room secured by lock and key for her protection" at some point in 2013. Pl. Opp'n at 4. The Court does not, however, consider these facts in deciding the motion to dismiss because they are not documented within the four corners of Plaintiff's Amended Complaint. *See* discussion *infra* note 14.

at ¶ 101, "Mr. Wilson's violence against Cloth and Kippeman was classified as behavior that created a hostile work environment," *id.* at ¶ 109, and their "claims were actually investigated at the Agency level," *id.* at ¶ 111.

After these interactions, Ms. Allen ceased her complaints to BEP in "fear of retaliation by Mr. Wilson with his cane and the Agency's failure to protect" her. *Id.* at ¶ 48. Between 2008 and 2012, and at "times thereafter," she "lived in morbid fear that Mr. Wilson would attack her with his cane and seriously injure her or kill her." *Id.* at ¶ 55. She "pared [sic] with other employees when she entered the common areas of the Agency," *id.* at ¶ 56. A final interaction with Mr. Wilson occurred on one such occasion on October 16, 2014. That morning, Ms. Allen was walking to the cafeteria to get breakfast with another employee, Tracey Newell. Ms. Allen spotted Mr. Wilson at the end of the hallway, made eye contact with Mr. Wilson and discerned an "angry look on his face," and told Ms. Newell, "let's go back" as Ms. Allen became nervous and began shaking. *Id.* at ¶ 49. Ms. Allen and Ms. Newell turned toward Ms. Allen's office, intending to allow Mr. Wilson to pass; Mr. Wilson instead halted at the end of the hallway with a "glaring stare" while lifting his cane, hitting the floor with it repeatedly, and "going off and making all types of noise." *Id.* Mr. Wilson eventually left, "mumbling," after which both Ms. Allen and Ms. Newell reported the incident to the Manager of Material Technology, Jessica Gonzalez. [13] *Id.* No further incidents or administrative proceedings are alleged in the Amended Complaint, though Mr. Wilson appears to have been terminated in 2018. *Id.* at ¶ 131.

---

[13] Plaintiff refers to Ms. Gonzalez as "her supervisor." Am. Compl. at ¶ 49. Ms. Evans is referred to as "my boss" in the 2012 statement by Gary Cloth. *See id.* at ¶ 104 n.3. She is also referred to as an immediate supervisor of the referenced employees in Plaintiff's description of the January 17, 2013, incident with Mr. Kippeman. *See id.* at ¶¶ 107–113. The Court thus infers that Ms. Gonzalez replaced Ms. Evans as Ms. Allen's immediate supervisor at some point after the January 17, 2013, incident.

On March 5, 2018, the Equal Employment Opportunity Commission issued a "Right to Sue Letter," *id.* at ¶ 8, giving Ms. Allen 90 days to bring a civil action under Title VII in federal court, *see* 29 C.F.R. § 1601.28.[14]  Plaintiff filed her Complaint within this deadline on May 25, 2018, and subsequently filed an Amended Complaint on October 11, 2018.  *See* Am. Compl. Defendant responded with a motion to dismiss in part and a motion for partial summary judgment on October 25, 2018.  *See* Def. Mot. Dismiss and Mot. Part. Summary Judgment.  That motion is ripe for the Court's consideration.

## III.  LEGAL STANDARD

The motion for partial summary judgment presents the simpler issue in this suit, and so the Court will assess it first.

### A.  Motion for Partial Summary Judgment

The sole matter on which Defendant pursues summary judgment is Plaintiff's equal employment opportunity claim based on her non-selection for two positions in 2009 and 2010. *See* Def. Mot. at 6–7; Am. Compl. at ¶¶ 142–54.  Ms. Allen voluntarily withdrew her equal employment opportunity claim from her Amended Complaint in her opposition to BEP's

---

[14] Plaintiff references this letter as "Attachment A," which appears to be a reference to the materials included in her Opposition to Defendant's Motion to Dismiss.  However, "in determining whether a complaint fails to state a claim [under Rule 12(b)(6)], . . . [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *Mpoy*, 758 F.3d at 291 n.1 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46–47 (2d Cir. 1991); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014–15 (1st Cir. 1988).  Unlike the materials attached to the original complaint, which are incorporated by reference as critical to the substance of Plaintiff's argument, *see supra* note 3, the Court cannot consider Plaintiff's additional ten pages of exhibits without converting the 12(b)(6) motion to a motion for summary judgment, *see Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).  This Court declines to do so. Accordingly, in addressing Defendant's arguments for dismissal of Plaintiff's claims, the Court considers only the Amended Complaint and the Exhibits attached to the original Complaint, which it deems incorporated by reference.

motion.[15]  *See* Pl. Opp'n at 51.  Federal Rule of Civil Procedure 41(a)(2) requires dismissal "at

the plaintiff's request" by a court order in cases where a plaintiff neither files a notice of

dismissal before the opposing party serves a motion for summary judgment, Fed. R. Civ. Pro.

41(a)(1)(A)(i), nor files a stipulation of dismissal signed by all parties, *id.* at 41(a)(1)(A)(ii)).

*See generally id.* at 41(a).  Because Ms. Allen's request comes after Defendant's Motion for

Partial Summary Judgment on this claim and because she has not provided a stipulation of

dismissal signed by both parties, Rule 41(a)(2)'s requirement of dismissal by court order

controls.  Federal courts generally grant dismissals under Rule 41(a)(2) "unless the defendant

would suffer prejudice other than the prospect of a second lawsuit or some tactical

disadvantage." *Robinson v. England*, 216 F.R.D. 17, 18 (D.D.C. 2003) (citing *Conafay v. Wyeth

Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986); *see also* 9 *Fed. Prac. & Proc. Civ. 2d* § 2364).  Here,

because Defendant has moved for summary judgment on the same claim, there is no evidence

that the dismissal would cause BEP to suffer such prejudice.  The Court therefore dismisses

Plaintiff's equal employment opportunity claim, including the 2009 and 2010 non-promotions

(Count Five).

### B.  Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" in order to give the defendant fair notice of the claim and the grounds

upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(per curiam).  Rather than requiring a determination of a plaintiff's ultimate likelihood of success

---

[15] In making this withdrawal, Ms. Allen seeks to preserve "all events and allegations . . . as evidence of retaliation," referring to an "agreement" between the parties on this matter.  Pl. Opp'n at 51.  BEP contests this characterization and denies any such agreement.  Def. Reply at 3. The Court need not address this evidentiary dispute at the pre-trial stage.

on the merits, a motion to dismiss under Rule 12(b)(6) tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, the court deciding a Rule 12 motion must carefully parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). There must be some heft to the factual cloth woven by the plaintiff at this stage: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. And legal conclusions, standing alone, will not suffice. *Id.* A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint does not need to plead all elements of the prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010). At the motion to dismiss stage, a Title VII plaintiff need only allege "facts that, taken as true, render his claim of retaliation [or discrimination] plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (citing *Twombly*, 550 U.S. at 556).

# IV. ANALYSIS

Having dismissed Ms. Allen's non-promotion claims, the Amended Complaint contains five other employment discrimination claims arising from BEP incidents that occurred between 2008 and 2013. Specifically, Plaintiff avers reprisal and retaliation by her employer for her EEO activities; creation of a hostile work environment; disparate treatment; harassment based on retaliation and race discrimination; and race and sex discrimination. Defendant argues that this Court should dismiss all claims other than the hostile work environment claim because these claims are duplicative of Plaintiff's hostile work environment claim. Mot. Dismiss at 4–5. Defendant contends that "Plaintiff . . . has attempted to plead multiple retaliation and discrimination claims arising out of the same alleged conduct" as her hostile work environment claim. *Id.* at 4. But the Court disagrees with Defendant's reasoning because the bare fact that multiple claims rely on overlapping conduct is not inherently problematic. "The D.C. Circuit has made clear that the same acts may 'simultaneously support different types of Title VII claims' since 'plaintiffs are free to plead alternative theories of harm that might stem from the same allegedly harmful conduct.'" *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 195 (D.D.C. 2012) (citing *Baird I,* 662 F.3d at 1248). Such employment discrimination claims can implicate two distinct legal standards: the controlling standard for a claim of retaliation or discrimination based on discrete acts differs from the operative legal standard for a hostile work environment claim.

Allegations that the employer engaged in a discrete discriminatory or retaliatory act or acts are analyzed under the three-step framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973). *See Gardner v. District of Columbia*, 448 F. Supp. 2d 70, 74 (D.D.C. 2006) (citing *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir.

2003); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49–50 & n.8 (D.D.C. 2003)).

Such alleged acts must be timely filed to be actionable and, for a claim brought by a federal

employee, "each discrete discriminatory act starts a new [45-day] clock for filing charges

alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

      The factual allegations raised in a discrete claim of discrimination or retaliation in

violation of Title VII can also, separately, support a hostile work environment claim. *See id.*

(citing 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 348–349 (3d

ed.1996)). In analyzing hostile work environment claims, the D.C. Circuit has underscored that

they "'are different in kind from discrete acts' because '[t]heir very nature involves repeated

conduct.'" *Baird I*, 662 F.3d at 1251 (quoting *Singletary v. District of Columbia*, 351 F.3d 519

(D.C. Cir. 2003) (internal citation omitted)); *see also Nat'l R.R. Passenger Corp.,* 536 U.S. at

115. Moreover, the filing requirements for a hostile work environment claim are in some

respects less stringent as compared to a claim predicated on one or more discrete discriminatory

acts. For a hostile work environment claim, so long as an "act contributing to the claim occurs

within the [statutory] filing period, the entire time period of the hostile environment may be

considered by a court for the purposes of determining liability." *Id.* at 117.

      In short, employment discrimination suits can present overlapping factual allegations

combined with distinct legal standards that control, respectively, claims of discrete

discriminatory acts and claims that the employer created or sustained a hostile work

environment. *See Brooks v. Grundmann*, 748 F.3d 1273, 1279 (D.C. Cir. 2014) ("Title VII cases

often involve multiple, sometimes mutually exclusive, theories of relief."). A Title VII plaintiff

might, accordingly, claim discrete instances of retaliation or discrimination or claim, in the

alternative, that there is a hostile work environment because "several individual acts that 'may

not be actionable on [their] own' . . . become actionable due to their 'cumulative effect.'" *Id.* (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115). Furthermore, a Title VII plaintiff can proffer facts that, read cumulatively, support more than one hostile work environment claim; for instance, a plaintiff could draw on overlapping facts to advance a claim that the employer created a hostile work environment based on retaliation and also to advance a claim that the employer created a hostile work environment based on race and/or gender discrimination. *See, e.g.*, *Whorton v. Wash. Metro Area Transit Auth.*, 924 F. Supp. 2d 334, 334 (D.D.C. 2013) (presenting claims of hostile work environment based on retaliation, race, and gender).

Here, putting aside Plaintiff's confusing labels for each count of her Amended Complaint, the Court finds that Plaintiff's sprawling Amended Complaint establishes three plausible hostile work environment claims adequate to survive a Rule 12 motion. The Court thus denies Defendant's motion to dismiss Ms. Allen's reprisal-retaliation claim, disparate treatment claim, and claim of harassment based on retaliation and race discrimination. It partially grants Defendant's motion to dismiss Plaintiff's race and sex discrimination claim to the extent that Plaintiff merely repeats facts asserted in other portions of the Amended Complaint and does not assert a legal argument that is meaningfully distinct from a hostile work environment based on race or gender discrimination. Because Defendant does not argue for the exclusion of any facts or claims—but rather argues for the full dismissal of entire claims as duplicative, which this Court declines to do—it is not necessary to determine the precise scope of each of the hostile work environment theories that Plaintiff plausibly alleges at this pre-answer stage. In the end, regardless of how Plaintiff has labeled her various counts in the Amended Complaint, her cumulative factual allegations leave her with only three plausible hostile work environment claims based on: 1) retaliation; 2) race; and 3) gender/sex.

## A. Reprisal-Retaliation

The Court will first consider Ms. Allen's "reprisal-retaliation" claim, which it understands to be an allegation of hostile work environment based on retaliation. *See Baird II*, 792 F.3d at 168 (citing *Hussain v. Nicholson,* 435 F.3d 359, 366 (D.C. Cir. 2006)). In the Amended Complaint, Plaintiff does not appear to allege that she exhausted her administrative remedies in the manner required to bring discrete claims of retaliation. For a federal employee such as Ms. Allen to bring claims of discrete retaliatory acts in federal court, the employee must have first administratively exhausted the claim. *See Ramsey v. Moniz*, 75 F. Supp. 3d 29, 42 (D.D.C. 2014). Administrative exhaustion requires the federal employee to "'initiate contact' with an EEO Counselor in her agency 'within 45 days of the date of the matter alleged to be discriminatory [or retaliatory].'" *Id.* at 46 (quoting *Steele v. Schafer,* 535 F.3d 689, 693 (D.C. Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)) (citation omitted). If the employee fails to file each discrete charge within this 45-day period, then the claim is time-barred unless an equitable doctrine such as tolling or estoppel applies. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 355, 393 (1982). A plaintiff's claim of a discrete discriminatory or retaliatory act does not become actionable simply because the plaintiff asserts that the act is in some way connected to a discrete act that has been timely administratively exhausted. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). To the contrary, the "requirement of timely administrative exhaustion applies to each discrete act." *Ramsey*, 75 F. Supp. 3d at 46 (quoting *Singletary,* 351 F.3d at 526 (internal citation omitted)).

Plaintiff's Amended Complaint fails to establish the predicates for a claim of discrete discriminatory acts. Plaintiff does not clearly articulate discrete instances of alleged retaliation,

followed by a report to the EEO Counselor in her agency within 45 days of each respective incident. Instead, Ms. Allen mentions her filing of EEO complaints during the entire period from approximately 2009 to 2013 and proffers a blanket invocation of the EEOC's "Right to Sue Letter" as proof of "[e]xhaustion of [a]dministrative [r]emedies." Am. Compl. at ¶ 8. She then "alleges a hostile work [sic] [environment] and retaliation as a continuing course of employment discrimination before June 24, 2009 and after June 24, 2009." *Id.* at ¶ 10. Accordingly, the most plausible interpretation of Plaintiff's Amended Complaint and the arguments Plaintiff raises in opposition to the motion to dismiss is that the specific events recounted in the Complaint contributed to an overarching hostile work environment.

The first portion of the allegations in Plaintiff's lengthy Amended Complaint center on retaliation-reprisal, and so the Court will begin there. The antiretaliation provision of Title VII "[p]rohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting § 2000e–3(a)). In a retaliatory hostile work environment claim, a plaintiff argues that the "cumulative effect," *see Nat'l R.R. Passenger Corp.*, 536 U.S. at 115, of "adequately linked" acts amount to a "coherent hostile environment claim." *Baird II*, 792 F.3d at 168 (citing *Baird I*, 662 F.3d at 1251). To be adequately linked, such acts might, for example, "involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers." *Id.* (citing *Baird I*, 662 F.3d at 1251 (alterations omitted)). Not all acts will qualify, though; acts must be "of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Id.* (quoting *Hussain,* 435 F.3d at 366 (quotation marks and alterations omitted)).

To determine whether acts reach this threshold, the court is to "look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie-Mae*, 712 F.3d 572 (2013) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal citation omitted)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The totality of the circumstances analysis is an objective standard. *See Baird II*, 792 F.3d at 169 (citing *Harris*, 510 U.S. at 21).

Here, construing all facts as true and resolving all ambiguities in Plaintiff's favor, as this Court must at the Rule 12 stage, Ms. Allen's factual allegations establish a plausible retaliatory hostile work environment claim. The relevant legal test is whether Defendant "subjected [her] to 'discriminatory intimidation, ridicule, and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of [her] employment and create an abusive working environment.'" *Hussain*, 435 F.3d at 366 (quoting *Harris*, 510 U.S. at 21–22 (internal citation omitted)). Ms. Allen engaged in a statutorily protected activity by filing EEOC complaints regarding both a co-worker's behavior and the manner in which her supervisors handled problematic interactions with this co-worker. In her Amended Complaint, Ms. Allen argues that BEP's failure to alter or adjust her workplace conditions or to remove her from Mr. Wilson's physical proximity was a retaliatory act. Am. Compl. at ¶ 68. More specifically, she contends that the VIT's decisions were retaliatory, and that the VIT's "refus[al] and fail[ure] to investigate" her claims, *id.* at ¶¶ 63–64, were meant to "deter" her from "engaging in future EEO activities," *id.* at ¶ 65. Ms. Allen also points to specific instances of alleged retaliation—such as assignment to a clean-up

and the agency's contention that she lied in support for her claim.[16] *See* Compl. Ex. 3, ECF No. 1-5; Am. Compl. at ¶¶ 94, 103. To survive a motion to dismiss, Ms. Allen need not prove these factual allegations or make a further showing. The Court's "role is not to speculate about which factual allegations are likely to be proved after discovery," but rather to assess whether the facts Plaintiff alleges render the claim plausible. *Harris v. D.C. Water & Sewer Auth*, 791 F.3d at 70. Because the factual allegations asserted here plausibly support a retaliatory hostile work environment legal theory, the Court denies Defendant's motion to dismiss Count One in its entirety as duplicative.

## B. Disparate Treatment

Ms. Allen also raises a disparate treatment claim in which she argues that "[t]he stated reasons for the Defendant's conduct . . . were pretext to hide the Defendant's Disparate Treatment against Plaintiff Allen and to hide Defendant's discriminatory animus." Am. Compl. at ¶ 79. She contends that BEP discriminated against her because of her status as an African-American woman. *See* Am. Compl. at ¶ 80 ("Plaintiff, Patricia Allen, as a Black African American Female, is a member of a protected class.").

In support of this claim, Ms. Allen's pleadings recount *several incidents* that are consistent with an inference of discriminatory treatment. Because Plaintiff's disparate treatment claim is based on a course of conduct involving several incidents rather than derived from

---

[16] Though it does not rely on materials outside the Amended Complaint in ruling on Defendant's motion to dismiss, the Court notes that facts included in Plaintiff's original Complaint undermine this allegation of retaliation to at least some extent. For instance, although BEP initially seems to have believed that Ms. Allen falsified information, an agency investigation ultimately concluded that "there is no evidence to indicate that Ms. Allen provided false testimony." Compl. at ¶ 52. This BEP investigation cited witnesses who stated that they may have misunderstood Ms. Allen due to her "emotional state." *Id.* Accordingly, BEP took no administrative action against her. *See id.*

allegations of discrete acts that were timely administratively exhausted, the Court also construes this claim as a hostile work environment claim. *See Whorton*, 924 F. Supp. 2d at 345 ("[H]ostile work environment [claims] . . . involve repeated conduct."); *see also Johnson v. District of Columbia*, 49 F. Supp. 3d 115, 120 (D.D.C. 2014); *Faragher*, 524 U.S. at 786 n.1.

Ms. Allen attributes the agency's motivation for a number of the incidents to be based on her race and gender. For example, Plaintiff alleges that BEP treated her differently from white male employees in resolving two separate incidents in which Mr. Wilson attempted to strike at a co-worker with a cane. *See* Am. Compl. at ¶¶ 84–93. She provides a statement from the white male employee suggesting that he, unlike Ms. Allen, was permitted to stop working alongside Mr. Wilson in the wake of his incident. *See* Compl. Ex. 6, ECF No. 1-8. In addition, Plaintiff includes an exhibit in which another black, female co-worker stated that she was "going through the same thing, with the same people" and that only black, female employees were asked to perform an office clean-up. Compl. Ex. 3, ECF No. 1-5. And she further alleges that BEP accused her of lying about the attack, whereas it did not make a similar claim regarding the similarly-situated white male employee. *See* Am. Compl. at ¶¶ 94, 103.

To make out a claim of hostile work environment based on either race or sex/gender, a "plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." [17] *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (citing *Harris*, 510 U.S. at 21). The Supreme Court has made clear that the "scope of the prohibition" on discrimination in Title VII "is not limited to 'economic' or 'tangible'

---

[17] The same legal standard applies to hostile work environment claims that sound in, respectively, racial harassment and sexual harassment. *See Meritor Sav. Bank, FSB*, 477 U.S. at 66 (1986); *see also* 42 U.S.C. § 2000e–2(a) (making it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex.").

discrimination." *National R.R. Passenger Corp.*, 536 U.S. at 116 (quoting *Harris,* 510 U.S. at 21 (internal citation omitted)). Rather than cabin "terms and conditions" to a narrow contractual definition, "the phrase 'terms, conditions, or privileges of employment' [of 42 U.S.C. § 2000e–2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment . . .' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Id.* (quoting, respectively, *Faragher,* 524 U.S. at 786 (internal citation omitted); *Harris*, 510 U.S. at 21 (internal quotation marks omitted) (internal citation omitted)). However, this standard is not tantamount to a "general civility code" for the workplace. *Vance,* 570 U.S. at 452 (quoting *Oncole v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998)). "To be actionable, charged behavior need not drive the victim from her job, but it must be of such severity or pervasiveness as to pollute the working environment, thereby 'alter[ing] the conditions of the victim's employment.'" *Id.* (quoting *Harris,* 510 U.S. at 21–22).

As set forth above, Plaintiff offers a series of factual allegations that make out a claim of discriminatory employer treatment on the basis of race and also on the basis of gender/sex under a hostile work environment theory. The facts that Ms. Allen proffers go beyond "'sporadic use of abusive language' or generally boorish conduct," which would not rise to the level considered actionable under Title VII. *Vance*, 570 U.S. at 452 (quoting Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)). And Defendant, basing its request for dismissal solely on an argument that Plaintiff's claims are duplicative, does not address whether Plaintiff's hostile work environment claims meet the "severe or pervasive" standard. Thus, this Court does not reach this issue.

Read in the light most favorable to her, Plaintiff's pleading plausibly suggests that BEP created and sustained a racially discriminatory and gender/sex discriminatory hostile work

environment due to its treatment of African-American female employees and due to the manner in which it redressed problematic incidents with Mr. Wilson for African-American women as opposed to white men. This pleading is adequate to survive a Rule 12(b)(6) motion to dismiss, and Defendant's motion to dismiss Plaintiff's disparate treatment claim in its entirety as duplicative is therefore denied. The Court cautions, however, that Plaintiff must more crisply differentiate her claim for race-based discrimination from her claim for sex/gender-based discrimination to clarify how each of her factual allegations connects to each of these distinct theories of hostile work environment discrimination. Plaintiff must also establish that Defendant's alleged hostile work environment discrimination was *because of* the cited protected attribute in each instance. *See* 42 U.S.C. § 2000e–2(a) (barring employment discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment[] *because of* such individual's race . . . [or] sex" (emphasis added)).

### C. Harassment, Race Discrimination, and Sex Discrimination

The Court next considers Plaintiff's remaining claims of, first, harassment based on retaliation and race discrimination and, second, race and sex discrimination. The Court understands these remaining counts as extensions of the same claims that Plaintiff previously asserted for hostile work environment based on, respectively, 1) retaliation; 2) race discrimination; and 3) sex/gender discrimination.

In its motion to dismiss, Defendant argues that "Plaintiff has attempted to plead multiple retaliation and discrimination claims arising out of the same alleged conduct," Def. Mot. at 4, and urges this Court to dismiss all retaliation and discrimination claims as duplicative of Plaintiff's hostile work environment claim. But Defendant's emphasis on the bare fact that the claims arise from the same alleged conduct is misguided. As previously discussed, a plaintiff in

an employment discrimination suit may properly rely on the same alleged conduct to establish more than one claim.  Dismissal of claims as duplicative is nonetheless proper if the claims are truly "identical" claims "that stem from identical allegations, that are decided under identical legal standards, and for which identical legal relief is available."  *Perez v. D.C. Dep't of Emp't Servs.*, 305 F. Supp. 3d 51, 55 (D.D.C. 2018) (quoting *Wultz v. Islamic Republic of Iran,* 755 F. Supp. 2d 1, 81 (D.D.C. 2010).

Here, dismissal of all the remaining claims in their entirety is not appropriate because the factual allegations are not wholly identical to Ms. Allen's hostile work environment pleading.  In particular, Ms. Allen's claim for harassment based on retaliation and race discrimination relies on specific factual allegations that are not detailed in either the hostile work environment claim or anywhere else in the Amended Complaint.  For example, this portion of Ms. Allen's Amended Complaint describes how Mr. Wilson allegedly viewed Ku Klux Klan material on his computer, which BEP failed to prevent.  Am. Compl. at ¶ 128 & n.4.  It also recounts other instances of Mr. Wilson's alleged discrimination, such as his statement "there [is] no fuc . . way a Black man will become president."  *Id.* at ¶ 130.  Plaintiff contends that BEP's failure to intervene "condoned, encourage[d] and tolerated" Mr. Wilson's "racial bias," despite notice of such incidents and other "escalating progress of Mr. Wilson's bias."  *Id.* at ¶ 131.

Accordingly, although these allegations are confusingly included in a separate count, the Court concludes that these additional facts support Plaintiff's previously asserted claim of a racially discriminatory hostile work environment.  It thus declines to grant Defendant's motion to dismiss Plaintiff's harassment claim in its entirety as duplicative.  Again, however, the Court underscores that Plaintiff's future submissions will need to delineate the precise facts—including the particular events and the motivations of both employees and management—that support each

claim of a hostile work environment based on, respectively, retaliation, race discrimination, or gender/sex discrimination.

Finally, the Court finds that Plaintiff's claim of race and sex discrimination in Count Six by and large simply repeats the same facts and legal theories that Plaintiff pleads elsewhere. The Court thus partially grants Defendant's motion to dismiss the claim of race and sex discrimination to the extent that Plaintiff does not aver new facts or legally cognizable claims other than those presented in the previously described hostile work environment claims.

## V. CONCLUSION

Because Ms. Allen has withdrawn her equal employment opportunity claim, including the two non-promotions, the Court will dismiss that claim. And to the extent that Ms. Allen's claim of race and sex discrimination does not present any unique facts or distinct legal theories, the Court will dismiss that claim. But the Court will deny Defendant's motion to dismiss the claims for retaliation, disparate treatment, and harassment in their entirety because it finds that Plaintiff has established plausible, distinct arguments that are sufficient to survive a Rule 12 motion for, respectively: 1) hostile work environment based on retaliation; 2) hostile work environment based on race discrimination; and 3) hostile work environment based on gender discrimination. Although Plaintiff's labelling of the respective counts is disorganized and confusing, the Court looks past these issues to tease out the overarching claims and allegations contained throughout the Amended Complaint. Thus, Plaintiff may rely upon the factual allegations contained in the entirety of her Amended Complaint to support the three overarching claims of hostile work environment, regardless of the specific count under which such factual allegations appear. Moving forward, however, this Court emphasizes that parties are to address each of these causes of action with more analytic precision using the legal standard that this

Circuit has set forth in *Baird I* and *Baird II* to evaluate Title VII hostile work environment claims.

     For the foregoing reasons, BEP's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 24, 2019

RUDOLPH CONTRERAS
United States District Judge
