**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PATRICIA A. ALLEN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 18-1214 (RC) |
| | : | |
| v. | : | Re Document No.: 205 |
| | : | |
| JANET YELLEN, Secretary of the Treasury, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S BILL OF COSTS**

## I. INTRODUCTION

Plaintiff Patricia Allen ("Ms. Allen"), brought an action against Defendant, the Secretary of the Treasury, Janet Yellen, in her official capacity. Ms. Allen alleged that her employer, the United States Bureau of Engraving and Printing (collectively, the "Government") subjected her to a hostile work environment in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Amended Complaint ("Am. Compl."), ECF No. 12 ¶ 2. On November 9, 2022, a jury verdict was entered, and the Court returned a judgment in favor of the Government. Judgment on the Verdict ("Judgment"), ECF No. 178. Ms. Allen subsequently filed a motion for judgment as a matter of law or a new trial in the alternative, which the Court denied on June 9, 2023. *See* Plaintiff's Motion for a Directed Verdict as a Matter of Law Alternative for a New Trial ("Pl.'s Mot."), ECF No. 179; *Allen v. Yellen*, No. 18-cv-1214, 2023 WL 3933723, at *16 (D.D.C. June 9, 2023). The Government then filed a Bill of Costs for $8,775.80. *See* Itemization of Costs ("Itemization"), ECF No. 205-2 at 1–2. Ms. Allen opposed the Bill of Costs, arguing that imposing costs would be a financial hardship on her counsel and would have a chilling effect on civil rights litigation. *See* Plaintiff's Opposition and Objection to

Defendant [sic] Request for Bill of Costs ("Pl.'s Opp'n"), ECF No. 206 ¶¶ 2–7. For the reasons set forth below, the Court grants the costs in their entirety.

## II. BACKGROUND

Ms. Allen filed a complaint against the Secretary of Treasury in May 2018 alleging employment discrimination under Title VII; she later amended her complaint in October 2018.[1] Am. Compl. Prior to trial, the Court held three pretrial conferences and made evidentiary rulings on the record. September 19, 2022, Pretrial Conference Transcript ("Sept. 19 Pretrial Tr."), ECF No. 159; October 24, 2022, Pretrial Conference Transcript ("Oct. 24 Pretrial Tr."), ECF No. 163; October 26, 2022, Pretrial Conference Transcript ("Oct. 26 Pretrial Tr."), ECF No. 169. A jury trial began on November 1, 2022.

On November 9, 2022, the trial concluded with the jury ruling in favor of the Government, and the Court entered a judgment to that effect. *See* Judgment. Ms. Allen then filed a motion for judgment as a matter of law, or, in the alternative, a new trial. *See* Pl.'s Mot. The Court denied Ms. Allen's motion because "the jury had ample grounds at trial to find that Ms. Allen did not meet her burden of proof." *See Allen*, 2023 WL 3933723, at *1.

The Government now seeks to recover costs of $8,775.80 under Federal Rule of Civil Procedure 54(d) and Local Rule 54.1 for five deposition transcripts, seven days of trial transcripts, and three pretrial conference transcripts.[2] *See* Defendant's Notice of Bill of Costs ("Def.'s Bill of Costs"), ECF No. 205 at 1; Fed. R. Civ. P. 54(d); Local Rule 54.1(d); Itemization

---

[1] When Ms. Allen filed the Complaint, the Secretary of Treasury was Steven Mnuchin. *See* Am. Compl. at 1.

[2] Ms. Allen, in her opposition, added an additional deposition to the list the Government submitted, so the costs Ms. Allen discussed in her opposition are inflated to $9,497.80. *See* Pl.'s Opp'n ¶ 10. Because the Government submitted an itemization of costs with receipts, explicitly detailing the breakdown of the costs, the Court will use $8,775.80 as the value of costs. *See* Itemization at 1–2.

at 1–2. Specifically, the Government asks the Court to tax costs for the deposition transcripts of Patricia Allen, Jessica Gonzalez, Rachelle Wright Sutton, Sireda Foster, and Sgt. Keith Anderson. *See* Itemization at 1. The Government asserts that the deposition transcripts were necessary to "prepare for the trial." *See* Def.'s Bill of Costs at 1. The Government similarly states that the trial transcripts were necessary to "brief an opposition" to Ms. Allen's motion for judgment as a matter of law or a new trial. *See id.* The Government calculated the costs using the maximum ordinary rate of $3.65. *See* Itemization at 1.

Ms. Allen opposed the Bill of Costs arguing that imposing costs would be a financial hardship on her counsel and would have a chilling effect on Title VII litigation. *See* Pl.'s Opp'n ¶¶ 2–7. Ms. Allen argued that the Government can "absorb the cost," while neither Ms. Allen, nor her counsel—who is representing Ms. Allen *pro bono*—can afford the cost. *See id.* Ms. Allen did not attach documentation to her opposition to support her assertion of financial inability. *See id.* Ms. Allen's only indication of her finances comes from statements that she is a "government salary employee" and is "without resources to contribute to Defendant's cost." *See id.* ¶¶ 2, 6. Further, Ms. Allen argues that taxing costs will "discourage future litigations by solo practitioners" who represent civil rights plaintiffs *pro bono*. *See id.* ¶ 5. Ms. Allen, therefore, urges the Court to exercise discretion and deny the Government's request for costs. *See id.* ¶¶ 9–10. In the alternative, Ms. Allen requests that the Court grant an "installment payment arrangement." *See id.* ¶ 11.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure state, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be awarded to the prevailing party." Fed. R. Civ. P. 54(d)(1). "The 'costs' capable of recoupment under Rule

54(d)(1) are listed in 28 U.S.C. § 1920." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 457 (3rd Cir. 2000) (quoting *Smith v. Se. Pa. Transp. Auth.*, 47 F.3d 97, 99 n.1 (3rd Cir. 1995)). 28 U.S.C. § 1920 enumerates costs including "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The Local Rules further require that deposition transcripts be "used on the record, at a hearing or trial" and that trial transcripts be necessary for appeal or "required by the court to be transcribed" when taxing transcripts. *See* Local Rule 54.1(d)(6)–(7). Taxing costs under "[R]ule 54(d) comprises two elements: (1) a heavy presumption favoring an award of costs to the prevailing party, and (2) a measure of clerical and judicial discretion to order 'otherwise.'" *Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1314–15 (D.C. Cir. 1981).

There is a strong presumption in favor of awarding costs to the prevailing party, as "liability for costs is a normal incident of defeat." *Delta Air Lines, Inc., v. August*, 450 U.S. 346, 352 (1981); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). But, "[t]he award of costs to the prevailing party is not automatic . . . because the rule is qualified by the phrase 'unless the court otherwise directs.'" *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985); *see also Marx*, 568 U.S. at 377. Consequently, federal courts have discretion to limit or deny costs pursuant to Rule 54(d). *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). That discretion is not unlimited, however, as "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Baez v. U.S. Dep't of Just.*, 684 F.2d 999, 1004 (D.C. Cir. 1982).

There are several "good reason[s]" for courts to deny costs. *See id.* First, a court may decline to award costs because of the non-prevailing party's indigence. *See Borum v. Brentwood Vill., LLC.*, No. 16-cv-1723, 2020 WL 5291982, at *13 (D.D.C. Sept. 4, 2020) (declining to tax

costs on plaintiffs in a class action who demonstrated inability to pay through income and "extenuating circumstances"). In some jurisdictions, chilling effects on civil rights litigants is a reason to deny costs. *See e.g., Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999) (considering the chilling effect on civil rights litigants when declining to tax costs). An additional ground for denying costs is based on the necessity of the items taxed. *See Youssef v. Fed. Bureau of Investigation*, 762 F. Supp. 2d 76, 88 (D.D.C. 2011) (declining to tax costs for pretrial transcripts because they were not necessary to prepare for litigation). Moreover, the burden of establishing a "good reason," and overcoming the presumption of awarding costs in Rule 54(d), is on the non-prevailing party. *See Baez*, 684 F.2d at 1004.

**A. Financial Inability**

First, to advance an argument of indigence, such that a court would decline to tax costs, parties must present "substantial documentation of a true inability to pay." *See Guevara v. Onyewu*, 943 F. Supp. 2d 192, 196 (D.D.C. 2013) (quoting *Chapman v. Al Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000)). "[U]nsubstantiated assertions of financial hardship . . . are an insufficient basis on which to deny costs." *Johnson v. Holway*, 522 F. Supp. 2d 12, 17 (D.D.C. 2007); *see also Moini v. Wrighton*, No. 19-cv-03126, 2022 WL 2528119, at *1 (D.D.C. July 7, 2022) (plaintiff could not allege indigency because no financial documentation was presented); *see also Williams v. Thresholds, Inc.*, No. 02-cv-9101, 2003 WL 22478784, at *1 (N.D. Ill. 2003) (plaintiff alleges that he is unemployed but failed to provide any documentation, so it was insufficient to overcome the presumption of awarding costs).

Moreover, the financial documentation must provide a comprehensive picture of the party's finances, including income, assets, and expenses. *See Borum*, 2020 WL 5291982, at *13. Thus, solely providing documentation of annual income is insufficient. *See e.g., Guevara*, 943

F. Supp. 2d at 196 (plaintiff's documentation of an annual income less than $13,000 without information of assets and expenses was insufficient to demonstrate indigence because "[p]laintiff did not provide . . . an estimate of her net worth and presents an incomplete financial picture.").

Pro bono representation is an insufficient basis to allege indigence for the purposes of objecting to costs. *See e.g., Bark v. U.S. Forest Serv.*, No. 12-cv-1505, 2014 WL 12768161, at *2 (D.D.C. Dec. 31, 2014) ("Although Plaintiffs are . . . receiving pro bono representation in this case, they have neither shown that they are indigent nor demonstrated resource constraints so severe as to prevent payment of taxed costs."). Furthermore, an attorney's agreement to pay a client's litigation costs does not impact the analysis for taxation of costs, as "that decision is ultimately between client and counsel." *See Borum*, 2020 WL 5291982, at *12 (discussing payment arrangements for costs in a class action litigation).

If the proper documentation is provided, such that indigence is established, the court may use its discretion to deny the taxation of costs when "payment would be crippling." *See Doe v. Garland*, No. 18-cv-4, 2022 WL 1908823, at *3 (D.D.C. June 3, 2022); *compare N.O. By Orwig v. About Women OB/GYN, P.C.*, 440 F. Supp. 3d 565, 566–68 (E.D. Va. 2020) (finding that it would be inequitable to tax costs where plaintiff makes approximately $22,000–$30,000 annually, has extensive medical debts relating to the litigation, and serves as the primary caretaker for her sick child); *with Doe*, 2022 WL 1908823, at *1, 3 (finding plaintiff had a net worth of $420,550.10, making it appropriate to tax costs even though his "monthly expenses exceeded his income . . . ."). Even if a party establishes indigence, however, the court may still exercise discretion and tax costs. *See Bark*, 2014 WL 12768161, at *2. This is because "[t]he defeated party's ability to pay . . . is not a prerequisite to an award of costs." *See Guevara*, 943 F. Supp. 2d at 196.

Additionally, the financial status of the party requesting costs is irrelevant to the inquiry, and as such, parties' finances are not compared when determining whether to tax costs. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (4th Cir. 1999) ("Rule 54(d) does not contemplate a court basing awards on a comparison of the parties' financial strengths."). This principle applies even when the United States government is the prevailing party because "nearly all parties will have disparate economics compared to the federal government." *See Bark*, 2014 WL 12768161, at *2. Courts, therefore, do not consider the difference in the parties' finances because shielding parties from costs when the government prevails would "insulate all litigants who lose to the government from the Rule 54(d) cost-shifting presumption." *See id.*

**B. Chilling Effects on Civil Rights Litigation**

Another factor some circuits consider when exercising discretion and denying costs is the chilling effect on civil rights litigation, including Title VII litigation. Courts in this circuit, however, "have generally rejected" the argument that taxing costs in civil rights cases will have a chilling effect on civil rights litigation. *See Youssef*, 762 F. Supp. 2d at 79, 85 (declining to consider chilling effects when taxing costs to a Title VII plaintiff); *see also Long v. Howard Univ.*, 561 F. Supp. 2d 85, 97 (D.D.C. 2008) ("costs are routinely awarded to prevailing defendants in civil rights cases."). The rationale is that Rule 54(d) serves an important function of discouraging frivolous civil rights lawsuits. *See Thomas v. George Washington Univ.*, 286 F. Supp. 2d 38, 40 (D.D.C. 2003) (finding that awarding costs, even for civil rights plaintiffs, advances the goal of chilling "baseless" claims).

Nevertheless, at least one circuit—the Ninth Circuit—recognizes chilling effects on civil rights litigation as a basis to deny costs. But even in the Ninth Circuit, possible chilling effects do not automatically defeat the presumption of awarding costs in all civil rights cases. *See Ass'n*

*of Mexican-Am. Educators v. California*, 231 F.3d 572, 591, 593 (9th Cir. 2000) (denying costs where the total exceeded $200,000 in an "extraordinary, and extraordinarily important, case" while maintaining that the presumption of awarding costs applies in civil rights cases). Indeed, the Ninth Circuit has also found that "relatively small" awards, such as "a sum" of $5,310.55, may not "chill" civil rights litigants. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 946 (9th Cir. 2003).

**C. Necessity of Deposition and Trial Transcripts**

When a prevailing party seeks costs for transcripts, courts consider whether the transcripts were necessary for litigation. *See Doe*, 2022 WL 1908823, at *4; 28 U.S.C. § 1920(2). The local rules require that the depositions be "used on the record, at a hearing or trial." Local Rule 54.1(d)(6). Courts interpret the local rule to include depositions used for "future depositions, motions, pretrial proceedings, or trial." *See Borum*, 2020 WL 5291982, at *15 (quoting *Sykes v. Napolitano*, 755 F. Supp. 2d 118, 120 (D.D.C. 2010)) (cleaned up). Furthermore, the transcript need not have been used at trial because necessity is determined based on what the parties thought at "the time the deposition was taken." *See Johnson*, 522 F. Supp. 2d at 18.

Trial transcripts are necessary, according to the local rules, if used for an appeal or if the court requires the parties obtain them. *See* Local Rule 54.1(d)(7). Courts have interpreted this rule to include the use of transcripts to respond to a motion for a new trial. *See Youssef*, 762 F. Supp. 2d at 88. In *Youssef*, the court differentiated pretrial conference transcripts because "the [c]ourt did not make any ruling" during the conference, and "[t]he [c]ourt memorialized its pretrial rulings in written orders so that the parties would not have to rely on the transcripts." *See id.* Therefore, the court found that the pretrial transcripts were not necessary. *See id.* The

rate used to calculate transcripts is an additional consideration when evaluating their necessity. *See Johnson*, 522 F. Supp. 2d at 19 (demonstrating that the rate used in calculations was standard through an exhibit).

## IV. ANALYSIS

Here, Ms. Allen raises no argument that the Government is not the prevailing party. Thus, the presumption of costs in Rule 54(d) applies, and Ms. Allen failed to meet her burden to overcome that presumption. *See Baez*, 684 F.2d at 1004.

### A. Financial Inability

First, Ms. Allen did not provide sufficient financial information to allege indigency. Ms. Allen failed to support her assertions of indigence with any documentation of her finances. *See* Pl.'s Opp'n. The only information Ms. Allen provided about her financial status is that she is a "government salary employee" and is "without resources to contribute to Defendant's cost." *See id.* ¶¶ 2, 6. Those assertions are insufficient to demonstrate indigence, however, as Ms. Allen did not indicate what her salary is, and even if she had, she did not provide a "[]complete financial picture" with assets and expenses. *See id.*; *Guevara*, 943 F. Supp. 2d at 196. Without information on Ms. Allen's finances, the Court cannot conclude that "payment would be crippling," and as such, she did not establish indigence. *See Doe*, 2022 WL 1908823, at *3.

Furthermore, Ms. Allen's counsel's finances are irrelevant to her indigency for purposes of taxing costs because an attorney's agreement to cover costs is "between client and counsel," *see Borum*, 2020 WL 5291982, at *12, and *pro bono* representation alone is insufficient to establish indigence, *see Bark*, 2014 WL 12768161, at *2. Additionally, as demonstrated in *Bark*, the Government's ability to "absorb the cost" is immaterial to Rule 54(d) because "disparate economics compared to the federal government" is not a ground to deny costs. *See*

*id.*; Pl.'s Opp'n ¶ 4. Therefore, Ms. Allen did not meet her burden to overcome the presumption of awarding costs through indigency.

**B. Chilling Effects on Civil Rights Litigation**

Next, Ms. Allen argued that taxing costs to civil rights plaintiffs will have a chilling effect by "discourag[ing] future litigations by solo practitioners." *See* Pl.'s Opp'n ¶ 5. This Court follows others in this Circuit in declining to consider chilling effects when taxing costs in civil rights cases. *See Youssef*, 762 F. Supp. 2d at 85; *Long*, 561 F. Supp. 2d at 97.

Even if the Court were to consider chilling effects, this case diverges significantly from the instances in which the Ninth Circuit denied costs due to chilling effects. In *Stanley*, the Ninth Circuit considered chilling effects when taxing costs on civil rights litigants because "[w]ithout civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation." *See Stanley*, 178 F.3d at 1080. Here, in contrast, Ms. Allen's Opposition focuses on the chilling effects for counsel, not litigants. *See* Pl.'s Opp'n ¶ 5. Furthermore, the cost of $8,775.80 is lower than the cases where costs were not awarded due to chilling effects. *Compare Ass'n of Mexican-Am. Educators*, 231 F.3d at 591, 593 (finding costs greater than $200,000 may chill litigants); *with Save Our Valley*, 335 F.3d at 946 ("[t]he district court might have believed that this relatively small sum—$5,310.55—would not 'chill' future civil rights litigation"). Thus, even if the Court were to consider chilling effects, Ms. Allen has not defeated the presumption of costs.

**C. Necessity of Deposition and Trial Transcripts**

Ms. Allen failed to address the necessity of the deposition transcripts, pretrial conference transcripts, and trial transcripts in her opposition; nevertheless, the Court will examine their necessity. The Government asserts that the deposition transcripts were used "to prepare for the

trial" and the trial transcripts were ordered "to brief an opposition to Plaintiff's motion for judgment as a matter of law, or, in the alternative, for a new trial." Def.'s Bill of Costs at 1. This assertion is supported by the Government's use of the depositions in motion practice. For example, the Government attached excerpts from Patricia Allen's and Jessica Gonzalez's depositions to a memorandum in support of a motion *in limine*. Defendant's Supplemental Memorandum in Support of Motion in Limine, ECF No. 155-5, 155-7. Additionally, the Government listed Patricia Allen, Sgt. Keith Anderson, Sireda Foster, Rachelle Wright Sutton, and Jessica Gonzales as Plaintiff's witnesses in a pretrial statement. Defendant's Pretrial Statement, ECF No. 119-2 at 1, 4–5, 7, 15. Thus, pursuant to *Borum*, the depositions were necessary for litigation because of their use to prepare for trial. *See Borum*, 2020 WL 5291982, at *15.

The trial and pretrial conference transcripts were also necessary for litigation. Ms. Allen's motion for judgment as a matter of law or, in the alternative, a new trial, constitutes sufficient necessity for the Government to order trial transcripts to brief an opposition. *See Youssef*, 762 F. Supp. 2d at 88 (trial transcripts used in responding to a motion for a new trial were necessary under the local rules); Pl.'s Mot. Unlike in *Youssef*, the three pretrial conferences here contained rulings on the record. *See Youssef*, 762 F. Supp. 2d at 88; Sept. 19 Pretrial Tr.; Oct. 24 Pretrial Tr.; Oct. 26 Pretrial Tr. The Order following the September 19 pretrial conference stated that the motions *in limine* were granted in part and denied in part "for the reasons stated on the record." *See* September 19, 2022, Order. Thus, that Order did not sufficiently address the reasoning of the Court, making the transcript necessary. Additionally, the October 24 and 26 hearings contained rulings on evidentiary issues. Oct. 24 Pretrial Tr. at 3–4, 9–12; Oct. 26 Pretrial Tr. at 14–15. Accordingly, the pretrial conference transcripts were

necessary to respond to Ms. Allen's motion. Pl.'s Mot. Thus, the trial and pretrial conference transcripts were necessary for litigation, such that they are taxable, and the Court grants Defendant's Bill of Costs totaling at $8,775.80.[3]

## V. CONCLUSION

For the foregoing reasons, Defendant's Bill of Costs of $8,775.80 is granted. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 20, 2024

RUDOLPH CONTRERAS
United States District Judge

---

[3] The Government's calculation of the total costs at $8,775.80 using the rate of $3.65 is accurate. Itemization at 1. As of October 2023, the maximum ordinary rate was raised to $4.00, however, the Government filed the Bill of Costs when $3.65 was the correct value. The Court also denies Ms. Allen's request for an installment plan of the costs, as there are procedural functions through the U.S. Attorney's Office to address repayment. *See* Pl.'s Opp'n ¶ 11; Defendant's Response to Plaintiff's Objection, ECF No. 207 at 5 n.3.